H. L. BONES, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee, and RICHARD O'CONNELL, Appellant.

**Drainage:** OBSTRUCTION OF SURFACE WATER: DAMAGES: EVIDENCE. The
1 plaintiff in an action for damages for flooding his land has the burden of showing that he sustained damage, and that the proximate cause was the negligence of defendant; and this burden is not sustained by proof that the overflow of plaintiff's land resulted from an unusual rainfall, and not from the failure of defendant to remove obstructions from the ditch on his land through which the water passed in a natural channel.

**Same:** RIGHT TO OBJECT. A land owner can not complain of a de-
2 cree authorizing defendant to maintain a culvert at a suitable place to carry the water from the land into a natural course, where the culvert operates to his own advantage.

**Same:** DAMAGES: INCONSISTENT DEMANDS. Where a railway company
3 is required to receive water from adjoining land onto its right of way, it can rightfully pass it along in a natural channel; and

one owning land on both sides of the right of way can not at the same time insist that the company maintain a dike to protect the land from overflow on one side, and demand damages for flooding the land on the other side by water retained by the dike.

*Appeal from Pottawattamie District Court.*—HON. W. R. GREEN, Judge.

SATURDAY, APRIL 10, 1909.

REHEARING DENIED TUESDAY, DECEMBER 21, 1909.

THE plaintiff brought his action for damages for alleged flooding of his land adjoining the defendant's right of way.   There was a cross-bill by the 'defendant bringing Richard O'Connell into the case as an adverse party.   The case was transferred to the equity side of the docket. There was a decree dismissing the petition and granting relief on the cross-bill.   The plaintiff and O'Connell both appeal.—*Affirmed.*

*John P. Organ;* for appellants.

*Carroll Wright* and *Saunders & Stuart,* for appellee.

EVANS, C. J.—The plaintiff is the owner of lands in sections 3, 9 and 10 in a certain township.   The lands abut upon the right of way of the defendant railway company.   He brought his action for damages in two counts. In the first he claimed damages for injury to his pasture, and for hay and growing corn destroyed by the flooding of his lands in June, 1906.   In the second count he claimed damages as assignee of defendant O'Connell for the destruction of growing corn by the same flood.   The railway of the defendant company runs in a general northeasterly and southwesterly direction through sections 3, 9

and 10.   Plaintiff's lands lie wholly on the westerly side
of the railway.   O'Connell also owns lands abutting the
railway on the westerly side, and lying in a northerly di-
rection from those of plaintiff.   It is upon this land that
the alleged damage was sustained by O'Connell.   O'Con-
nell owns land also abutting on the easterly side of the
right of way.   On the easterly side of the right of way is
Mosquito creek, which furnishes the only outlet for drain-
age of the lands under consideration.   Into Mosquito creek,
a small stream called "O'Connell Creek" flows from the
north through the land of O'Connell.   A still smaller stream
known as "Caster Creek" rises in the hills in the northwest
quarter of section 4, and flows south into the northwest
quarter of section 9, thence east to the railroad right of
way.   From that point it has been conducted for many
years by an artificial ditch constructed and maintained in
the right of way, and running northeasterly for a distance
between one-half and three-quarters of a mile and into
O'Connell Creek at the point where the latter creek crosses
the right of way.   The point of crossing the right of way
is very close to the point of discharge of O'Connell Creek
into Mosquito Creek.   Mosquito Creek runs in a south-
westerly direction, and for some distance runs close and
parallel to the right of way on the east side thereof, and
parallel, therefore, to Caster Creek as it is conducted in
a northeasterly direction along the right of way.   The
waters of the two creeks, however, run in reverse direc-
tions.   The following plat shows the situation in rough
outline:

The plaintiff charged that his land was flooded as a result of heavy rain in June, 1906, and that the direct cause of such flooding was the failure of the railway company to properly open the ditch within its right of way. It did not charge the railway company with any fault in maintaining its grade or any failure to maintain proper culverts. The defense was a general denial and a plea of settlement.

The settlement was based upon the fact that Bones acquired his land in sections 3 and 10 from O'Connell; that while O'Connell was the owner of the same he brought an action against the railway company for damages for

flooding the same land in 1903.   Pending such action, the railway company paid O'Connell $1,000 in full settlement for all damages, past and future, by reason of flooding caused by defendant's railway grade.   The defendant had always maintained a culvert at the point where O'Connell Creek crosses the right of way, but had no culvert opposite any part of plaintiff's land.   To avoid any future question of its liability for flooding the plaintiff's land, it desired to open through its grade another culvert at a suitable place near the point where Caster Creek was brought upon the right of way, and by its cross-bill it brought O'Connell in as a party for the purpose of determining its right to permit the water of Caster Creek to flow across the right of way upon the land of O'Connell on the easterly side.   In the court below the plaintiff and O'Connell resisted the right of the defendant to litigate such question in this action, and resisted its right to transfer the case to the equity side of the docket for such purpose.   That question, however, has been waived here, and our labor is confined to a consideration of the questions of fact involved.

The court below found that if the plaintiff and O'Connell suffered any damage it was fully covered by the stipulations of the prior settlement between O'Connell and defendant.   The decree also authorized the defendant to construct and maintain suitable culverts and openings under its track near the point where Caster Creek discharges its flood waters upon the right of way of the railway company in section 10, and to cast such flood water upon the premises of O'Connell on the east side of the railway track where the same may flow from such culvert and openings. The necessary effect of the decree of the court was to find that the plaintiff was not entitled to any recovery for the flooding of land in section 9.   The testimony shows that the land involved in this proceeding is low, level land lying between Mosquito Creek and the nearby hills out of which Caster Creek flows.   This creek seems to be a mere con-

duit for the conducting of water from the hills in times of rain. Practically no water runs in it, except immediately after rains. The plaintiff as a witness described its stream as being the size of his arm. On this low, level land it had no well-defined natural course. The water spread in various directions, settling of course into the lowest depressions. For many years artificial means have been adopted to confine it as much as possible to a narrow course, and the plaintiff and his grantor conducted it by artificial means to some extent to the right of way of the defendant, and the defendant by artificial means conducted it along its right of way northeasterly to O'Connell Creek. Its natural course was towards Mosquito Creek, but it did not appear to have any definite mouth where it discharged into Mosquito Creek. It is doubtless true that the railway grade occupied some part of the natural course of the water in time of flood.

I. The question for our consideration is whether the evidence justified the decree of the trial court in refusing plaintiff any allowance for damages. The burden was upon the plaintiff not only to show that he sustained damages, but that the proximate cause of such damage was the negligence of the defendant in permitting the obstruction of the ditch in question. We think plaintiff's evidence wholly failed at this point. The damage to plaintiff was caused by a particular flood resulting from a very heavy rainfall. The volume of water testified to was such that all the creeks overflowed their banks. H. G. Fisher, one of plaintiff's grantors and a witness for him, testified: "Caster Creek and all the creeks that come from the west are in the habit of going out of their banks and spreading out on the bottoms when a big rain comes. The banks are very steep until they strike the Mosquito bottom, and then they run down almost level or flat, and it causes the water to spread out of the ditches." Plaintiff testified: "When

1. DRAINAGE: obstruction of surface water: damages: evidence.

my pasture was flooded in 1906 it started down near the
mouth of the ditch, and it came out of its banks on both
sides." It is manifest, therefore, that an obstruction of
the ditch would not cause it to overflow at its mouth. It
is to be observed, also, that the cornfield of O'Connell
which was flooded was much farther north than the land
of Bones. If the obstruction of the ditch was holding the
water back so as to flood Bones, it would naturally have
afforded some protection to O'Connell, who was near the
mouth of the little stream. The topography as shown by
the elevations indicates a very slight fall of the water in
any direction, and the evidence fails to show, in our opin-
ion, that the removal of so-called obstructions from the
ditch in question could have saved the land from the floods
complained of. If the defendant company was responsible
for any proximate cause contributing to such flood, it was
the maintenance of its grade without sufficient culverts to
let the water pass into Mosquito Creek. But the plaintiff
chose to withhold any charge of negligence on that ground.
He may have intended thereby to avoid the plea of settle-
ment. Be that as it may, the only question we have to
consider at this point is whether the proximate cause of
the flood was the failure of the railway company to re-
move obstructions from the ditch. The evidence will not
justify an affirmative finding to that effect.

II. The appellants complain of that portion of the
decree which authorizes the defendant to maintain a cul-
vert at a suitable place at a point where Caster Creek is
brought upon its right of way. The appel-
2. SAME:
   right to     lants joined in their respective appeals, and
   object.
are represented here by the same counsel.
Why plaintiff should complain of a proposed culvert at
such place is not manifest. It would seem to us to be
advantageous to the plaintiff to permit the flood waters to
take the shortest course from the right of way into Mos-
quito creek, rather than to be conducted by artificial means

for nearly three-quarters of a mile north, and then back by a parallel and reverse course. His position in this respect is manifestly insincere. He virtually asks the court to require the defendant to maintain a dike which shall hold the waters on the westerly side, without prejudice to his claim for damages whenever the floods overflow him. This part of the decree furnishes him no grievance.

The contention of O'Connell is that the railway company should not be permitted to collect the waters at one point and discharge them through a culvert upon his land.

3. SAME: damages: inconsistent demands.

The decree does not authorize the railway company to collect waters at any point. The evidence does not show that it has collected waters at any point. It is plain, however, that if the railway company can be required to take the water upon its right of way, it is also entitled to pass it along according to the laws of gravitation. If the water which is discharged upon the right of way has been gathered or unduly collected for that purpose, such collecting has been done by the plaintiff and not by the defendant railway company. We can not determine any disputed question of right between the plaintiff and O'Connell, because they present to us no such question. On the contrary, they prosecute this appeal jointly. If the maintenance of the railway grade has had the effect heretofore of protecting O'Connell's land on the east from the floods that come from the west, he has acquired no right thereby to a continuance of such structure; if the railway company should choose to substitute trestle work for its grade, it would be within its rights. If the grade has had such effect, it must have been with corresponding disadvantage to the land of plaintiff and O'Connell on the westerly side. O'Connell is then in the position of claiming, as owner of land on the east side, the protection of a continuous dike, and as owner of land on the west side, claiming damages for the

flood caused by the dike. A court of equity can not permit a litigant to occupy such an inconsistent position.

We find no proper ground for interfering with the decree of the court below. It is accordingly *affirmed*.