F. FRED TENNIGKEIT, Appellant, v. ADDIE FERGUSON et al., Appellees.

WATERS AND WATERCOURSES: Drainage of Dominant Lands—Increased and Accelerated Flow. Owners of dominant lands may, without liability in damages, construct upon their lands ditches in the natural course of drainage, for the purpose of carrying surface waters to a highway culvert which lies in the pathway of such drainage, even though the flow of such waters is increased and accelerated at the point where, after passing through the culvert, they reach the servient lands.

*Appeal from Audubon District Court.*—E. B. WOODRUFF, Judge.

DECEMBER 13, 1921.

ACTION for damages caused by the casting of water on plaintiff's land, which defendants deny. At the close of plaintiff's evidence, on motion of defendants, the court directed a verdict in favor of defendants, on which judgment was rendered, and plaintiff appeals.—*Affirmed.*

*George H. Mayne,* for appellant.

*Graham & Graham* and *S. L. Ryan,* for appellees.

ARTHUR, J.—Defendant Ferguson owns the northeast quarter of the southwest quarter of Section 24, Township 80, Range 35, in Audubon County. Defendant Herndon owns the southeast quarter of the southwest quarter of the same section. Plaintiff owns the 80 acres adjoining these two 40's on the west, being the west half of the southwest quarter of Section 24, and other land lying west of this 80. The Nishnabotna River runs through other land of plaintiff's, from north to south, a little west of the

west line of plaintiff's 80 above described. The slope and drainage of defendants' lands and of plaintiff's 80 above described is westward toward the Nishnabotna River. Some time before the ditches complained of were dug, plaintiff had made a ditch beginning about 150 feet west of his east line, running west along the middle 40 line for a distance of perhaps 50 or 60 rods, to a depression angling to the southwest into the Nishnabotna River. Plaintiff made this ditch for the purpose of carrying the water which came through the road ditches and culvert onto his land.

Prior to 1915, when the Ferguson ditch complained of was made, there had been no ditch constructed across defendants' land from the pond to the road, to carry the water off of their land and into the road ditch or culvert. However, rains had washed gullies and depressions leading toward the culvert from the pond, and plaintiff so testified, on cross-examination.

There is a highway on the line between the lands of plaintiff and defendants, and a culvert extends across the road just east of the east end of the ditch constructed by the plaintiff, and west of the ditches constructed by the defendants. There was a small pond, located mostly on the Ferguson 40, and partly on the Herndon 40, opposite, and about 400 feet east of the culvert in the road. Coming down from the east into this pond was a small ditch, and into this ditch emptied two tile drains, carrying each about an inch in diameter of water. Before the ditches in controversy were made, this tile water ran down through this ditch into the pond, and there evaporated or seeped away. At times of heavy rains, the water collected in the pond and overflowed, and ran through gullies and depressions, where the ditches in controversy were afterwards made, in the same direction that the ditches were built, to the culvert and through the culvert onto plaintiff's land.

In 1915, a ditch was dug by defendant Ferguson on the line of the former gullies and depressions from the pond down to the road opposite the culvert. We say Ferguson dug this ditch,— we may treat it that way, because he seems not to have objected to its being made. As a matter of fact, as shown by the evidence, the ditch was dug under the direction of Carlson, road supervisor, for the purpose of centering the water coming down from

the east at a point directly east of the culvert in the road, for the purpose of keeping the road from being flooded and water-soaked for a distance on each side of the culvert. This ditch was dug really for the purpose of the improvement of the road. The Herndon ditch is on Herndon's land, a little south of the line between Herndon and Ferguson, and begins at the pond and runs west to the road, terminating opposite the culvert. As said above, the natural drainage is toward the west, and the water from the lands of defendants courses west onto the lands of plaintiff, which is the servient estate. It also appears that the water from rainfall flows across defendants' lands onto plaintiff's land in the same direction and in substantially the same place as before the ditches complained of were dug. Before the ditches were dug, at times of heavy rainfall, the water flowed out of the pond and through depressions and gullies approximately where the ditches are located, the only difference being that, in former years, before the ditches were dug, the water that came from the tiling through the ditch into the pond seeped away and evaporated, so that it was only water from rainfall that reached the plaintiff's land. Undoubtedly, in former years, before the road was laid between the lands of plaintiff and defendants, and before the road was graded, in the low ground where the culvert was placed, and before the waters were collected by the ditches in controversy and passed through the culvert onto defendants' land, the water coming from the east spread out, and was not cast upon plaintiff's land at one place, as it now is; and doubtless more water reaches plaintiff's land than formerly, when it was allowed to remain in the pond and seep away and evaporate.

Plaintiff complains that more water reaches his land than before the ditches were made; and that it is cast onto his land at a particular place; and that, in flowing out onto his land, the water carries silt and fills up the east end of his ditch, so that his ditch fails to collect the water and carry it off. We suggest that plaintiff might avoid his trouble by extending his ditch 150 feet east, in sufficient size to carry the water that flows from the culvert.

We think plaintiff's position not tenable. Plaintiff admits that the defendants' lands are the dominant estates, and that

the water naturally flows onto his land; that, before these ditches were made, the Ferguson ditch in 1915, and the Herndon ditch in 1917, there were gullies and depressions through which the water flowed, at times of heavy rains, in substantially the same place where these ditches now are. It also appears that the pond drained was negligible in size in dry weather, and was largely a collection of rain and surface water.

Defendants, the owners of the dominant estates, had the right to drain this small pond by ditches over the course of natural drainage, and had the right to dig ditches to more closely confine the flowage of the water. Section 1989-a53, Supplement to the Code, 1913; *Jontz v. Northup*, 157 Iowa 6; *Miller v. Hester*, 167 Iowa 180; *Pascal v. Donahue*, 170 Iowa 315.

It was not the fault of the defendants that the road authorities collected the water after it had arrived at the road, and passed it through a culvert onto the lands of plaintiff. Plaintiff's testimony was that the surface water flowed from defendants' land toward the culvert, and that by such flowage it had washed gullies and depressions down toward the culvert, before these ditches which are complained of were made. Undoubtedly, these depressions and gullies, which existed before the ditches were made, constituted a natural watercourse,—not a channel, with well defined banks; but the water flowed, within reasonable limits, in the course of the present ditches. *Hull v. Harker*, 130 Iowa 190.

Defendants' motion, among other grounds, stated that the testimony showed that the water which flowed onto plaintiff's lands, through the ditches complained of, was the flow of the surface water and of other water along the natural watercourse. We reach the conclusion that the court did not err in directing a verdict for the defendants and entering judgment thereon, and the judgment of the trial court is affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.