LORA J. HINKLE et al., Appellants, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

No. 39824.

NOVEMBER 12, 1929.

*Jaques, Tisdale & Jaques* and *T. P. Bence,* for appellants.

*J. G. Gamble, F. W. Miller,* and *T. A. Goodson,* for appellee.

MORLING, J.—I.   Defendant's line of railroad in question runs in a northwesterly and southeasterly direction on the bottom lands of the Des Moines River, a mile or more from the river, which flows in a direction substantially parallel to the railroad.   In the fall of 1925, defendant constructed a two by three feet culvert through its roadbed, thereby letting water from its right of way and the land north of its track flow upon the lands of the plaintiffs.   The culvert is at the north end of the north and south line between the premises of plaintiff Hinkle and those of plaintiff Baldwin, and is about 60 feet north of. the north end of a private ditch of the plaintiffs', which extends south along their partition line to the Des Moines River.   Defendant dug a small ditch from its right of way to the north end of plaintiffs' ditch.   It was conceded that defendant had no right to dig this ditch on plaintiffs' premises.   The decree required such ditch to be filled.   Of this defendant makes no complaint.   Plaintiffs' contentions are, in brief:   (1) That, by the construction and maintenance of a ditch on its right of way from a point northwestwardly from the culvert in question to an open ditch intersecting defendant's right of way about a mile east of the culvert, defendant has voluntarily changed the natural course of drainage, to which change it is bound to adhere; (2) that the natural course of drainage of the lands in the vicinity of the culvert is southeastwardly, and not across plaintiffs' lands.

A mile or more east of the culvert in question is an open ditch, extending from defendant's right of way southwardly a mile or so to the Des Moines River.   This ditch was constructed about 1882.   About the next year, defendant's predecessor in title dug northwestwardly from this last-mentioned ditch along the north side of its right of way an open ditch two miles or so in length through the drainage area in controversy.   Plaintiffs

say that the open ditch from the tracks to the river was dug under contract, express or implied, between the railroad company and neighboring landowners, among whom was the grandfather of the plaintiff Hinkle. There is no evidence of any contract, express or implied. There is no evidence of the circumstances under which the right-of-way ditch was constructed, further than that it was by the railroad company. There is nothing in the evidence on which to base a claim of right in the plaintiffs to the right-of-way ditch, or to it as an easement or an appurtenance to plaintiffs' premises. On the record, the case in this respect is simply that the defendant's predecessor assisted in the construction of the north and south ditch from the track to the river, and afterwards constructed a connecting ditch along the north side of its track. The ditch was constructed by the railroad company upon its own ground. *Prima facie,* the right-of-way ditch was dug for the purpose of draining the right of way for the railroad company's benefit. The mere fact that such a ditch was constructed by the railroad company and maintained for a number of years gives to plaintiffs no right to compel the company to continue to maintain it at its own expense. The mere construction and maintenance of the right-of-way ditch imposed no servitude upon the railroad company's premises, created no rights in the owners of plaintiffs' lands, and imposed no duty or obligation with respect thereto upon the railroad company. *King v. Chicago, B. & Q. R. Co.,* 71 Iowa 696; *Brainard v. Chicago, R. I. & P. R. Co.,* 151 Iowa 466. See, also, *Schwartz v. Wapello County,* 208 Iowa 1229.

II. The surface of the land of the vicinity under consideration is very flat and level. There is, however, undisputedly a gradual lowering elevation from the north and west toward the south and east. This is but another way of saying that the natural drainage is toward the river. There is no defined watercourse at the point where the culvert was installed, or touching the track in the vicinity. The culvert, however, is at the lowest point along the track in that particular drainage area. To the east (and southeast) of the culvert about a quarter of a mile is a slight rise in the ground, through which defendant's right-of-way ditch passes, and which separates the drainage area in which the culvert is situated from the drainage area next eastwardly. While plaintiffs contend against the existence of

such a rise or ridge, witnesses produced by plaintiffs, including the brother of plaintiff Hinkle, who had personal charge of her land for her, testified to the existence of this drainage area eastern boundary. It is manifest, not only from the testimony, but from physical conditions and from plaintiffs' own theory, that, were it not for defendant's roadbed, the drainage of a considerable area north of its location would be southerly and easterly across plaintiffs' premises. The evidence, including that of witnesses introduced by plaintiffs, is that, at the point where the culvert is constructed, and on either side of it, surface water from the north obstructed by the roadbed had, on occasions, risen until it overflowed the tracks and washed out ballast. An owner of land to the north threatened defendant with legal proceedings because of the obstruction of the natural flow of the water caused by the roadbed. Defendant caused survey to be made, and as a result installed the culvert in question, which is two feet wide by three in height. The right-of-way ditch on the north side of the track was dug about 1883, and was maintained until about 1919. The evidence is that every year or two the railroad company cleaned it out, and that, particularly at the rise in the ground referred to, about a quarter of a mile east of the culvert, the ditch would become obstructed. Plaintiffs claim that the obstruction now existing was caused by digging an open ditch from the north to that point, which brought down silt and filled the ditch. This may be true, but the fact remains that the company has, every year or two up to 1919, found it necessary to clean the ditch. Further attempt to keep the ditch open seems to have been then abandoned. The culvert in question is in the natural course of drainage. No creek or swale crosses the right of way in the vicinity. Plaintiffs complain that by the culvert the defendant collects the surface water and precipitates it in greatly increased and unnatural quantities, to the injury of the land below. They also claim that waters that do not naturally flow into that particular area have been conducted thereon by means of artificial ditches, and that these are, by means of the culvert, cast upon plaintiffs' lands. The evidence is not clear as to the extent of the natural drainage area, the waters of which flow naturally from the north and northwestwardly across plaintiffs' premises. If waters that do not belong there are brought upon that area, it is not shown

1370

to have been through any act or fault of defendant's, and defendant cannot be held responsible for it. *King v. Chicago, B. & Q. R. Co.*, 71 Iowa 696. Drainage of necessity ordinarily involves the concentration of diffused water into, and conducting it through, a covered or open drain. As against the owners of the land north of the right of way, defendant had "no right to neglect or refuse to construct sluices or culverts where they may be necessary for the conduct of water in its natural course, and by so doing flood" other lands. *Albright v. Cedar Rapids & I. C. R. & L. Co.*, 133 Iowa 644, 645. As against plaintiffs, defendant had the right to open the culvert. *Brainard v. Chicago, R. I. & P. R. Co.*, 151 Iowa 466. The culvert is installed at a place over which the water, if unobstructed, would naturally flow. It is in the general course of natural drainage. As respects drainage, and as against plaintiffs, the lands to the north of the right of way and the right of way itself were the dominant estates, the owners of which have the right to drain "in the general course of natural drainage by constructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse." Code of 1924, Section 7736. The case on both questions presented is ruled by our former decisions, to which no more than reference to the citations need be made. *King v. Chicago, B. & Q. R. Co.*, 71 Iowa 696; *Brainard v. Chicago, R. I. & P. R. Co.*, 151 Iowa 466; *Bones v. Chicago, R. I. & P. R. Co.*, 145 Iowa 222; *Tennigkeit v. Ferguson*, 192 Iowa 841; *Obe v. Pattat*, 151 Iowa 723.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, WAGNER, and GRIMM, JJ., concur.