W. L. ALLEN, Appellee, v. H. C. BERKHEIMER et al., Appellants.

**BOUNDARIES: Possession in Excess of Calls of Deed.** Principle af-
1   firmed that a vendor may be estopped to question the possession
of his purchaser, though such possession is in excess of the calls of
the deed, when it has been long acquiesced in by the vendor, and
is in accord with the mutual intent of the parties at the time of
the conveyance.

**WATERS AND WATERCOURSES: Surface Waters.** Principle af-
2   firmed that a party may drain surface waters in the general course
of natural drainage, but, in so doing, may not divert the waters
in the long established ditches of other parties.

*Appeal from Iowa District Court.*—R. P. HOWELL, Judge.

FEBRUARY 17, 1922.

REHEARING DENIED DECEMBER 15, 1922.

Plaintiff brought his suit in equity, to recover and to quiet title to a strip of ground, comprising about one acre. The defendant filed a counter-suit to recover and to quiet title against the plaintiff for a three-cornered parcel of ground, amounting to about one acre. By a second count, the defendant also charged the plaintiff with the wrongful diversion of surface water, so that the same was cast upon the defendant's lands. He prayed an injunction. The trial court dismissed the plaintiff's petition, and dismissed both counts of defendant's counterclaim. Both parties appeal.—*Modified and affirmed.*

*Havner, Hatter & Harned,* for appellants.

*C. W. E. Snyder,* for appellee.

EVANS, J.—I. This is a litigation between neighbors. It is therefore voluminous. It has been pending for more than six years, before reaching us. It is wholly a fact case. In view of our substantial accord with the findings of the trial court, we shall refrain from a discussion of the evidence, and shall announce our conclusions with little comment. Indeed, it would be quite impracticable to discuss the evidence, within the appropriate limits of an opinion. An intelligent presentation of the evidence would require the incorporation of several plats, which are presented to us in their original form, and which are too voluminous and unwieldy to be usable by us in an opinion. None of them has been presented to us in reduced size. In 1910, Allen bought of Berkheimer the west half of the northwest quarter of a certain Section 2 in Iowa County, with the reservation of a strip of land on the west side thereof. The dispute between the parties is twofold: (1) whether the reservation was for *two rods* or for *two rods and eight links;* (2) whether the reservation applied to the entire length of the 80-acre tract, or only to the length of the north half thereof.

The terms of the deed favor the contention of the defendant, although they are not free from ambiguity. There is some divergence, also, as between the deed and the antecedent contract pursuant to which it was made. The relief prayed by the plaintiff involved a reformation of the deed. The possession of the parties for several years following the transaction recognized the partition line as claimed by the defendant, so far as the north end of such line was concerned. On the southerly line there was no partition fence, and the question of the respective possession of the parties is in dispute.

The trial court found against the plaintiff, and dismissed his petition. We affirm this finding.

II. The first count of defendant's counterclaim claimed one acre of ground of irregular boundaries, known as a "three-cornered" piece. It joined the 80-acre tract referred to in the first division hereof at its northeast corner, and

1. BOUNDARIES: possession in excess of calls of deed.

is described as being located in the northwest corner of the east half of the northwest quarter of said Section 2. It lay between the east line

of the 80 purchased by the plaintiff, as indicated in the first division hereof, and a certain ditch extending southerly from the north line of the section. That a purchase of ground in some dimension at this locality was contemplated in the original purchase of the plaintiff is undisputed. Its description was impossible, except by metes and bounds. Surveyors ran their lines thereon, and furnished the description to the scrivener. The actual description furnished to the scrivener, which was incorporated in the deed, comprised slightly less than the full quantity of land located between the ditch and said east line of the purchased 80-acre tract. The purchaser, however, took possession up to and including the ditch, in accordance with the undoubted understanding of purchaser and seller. He so continued for many years, without challenge by the defendant, and until this suit was begun. This possession extended somewhat farther than the metes and bounds included by the scrivener in the deed. The trial court found that the possession was in accordance with the real understanding of the parties, and held the defendant to be estopped from claiming otherwise. We affirm such finding. The trial court also found the defendant guilty of fraud in the matter of description. We fail to find evidence of fraud. We are satisfied that it was a case of mutual mistake, and that the actual description adopted in the deed was of such a technical nature that a mistake in it could not readily have been discovered by either party.

III. On the question of diversion of water, it appears that the lands in question are in the Iowa River bottom, and near the north side thereof. They are situated near the foot of the high lands to the north, which discharge their 2. WATERS AND WATERCOURSES. surface water in the direction of the river. These waters pass over the lands involved herein. Fifty years ago, the grantors of these parties joined in the enterprise of constructing a ditch running straight south through Section 2, and near to and along the center line of the west half thereof. This ditch has been maintained ever since by the mutual acquiescence of all parties in interest, until the interference therewith by plaintiff which is now complained of by the defendant. This ditch was not wholly effective as a com-

plete protection to the lands. This was caused in part by the fact that the silt from the high ground tended to fill the same, and this tendency became more pronounced toward the lower portion of the ditch. At a point about 40 rods south of the north line of the section, the plaintiff dug a lateral along an alleged watercourse, which carried a large part of the water from the original ditch westerly into a very large pond known as the Berkheimer pond, and located partly upon the land of plaintiff and partly upon that of the defendant. This is the diversion complained of. It is contended by defendant that this was not a watercourse, and that, in any event, the plaintiff was not justified in allowing any water to run thereon from the joint ditch. The trial court held against this contention. We affirm this finding also, with one modification. The ditch dug by the plaintiff was on a natural watercourse, within the meaning of the law, and we think it clear that the plaintiff did have a right to use such watercourse for the conducting of the water into the pond. There was a large area of the lands of both parties which was exceedingly flat. It followed of necessity that, at times of high water, it was practically impossible to confine the water to any narrow course. The bottom of the ditch constructed by plaintiff had an elevation that was approximately four feet higher than the bottom of the pond, which was only a short distance therefrom. Manifestly, the water of the pond could never be drawn into the joint ditch. That must pass to the river, if at all, over another course. The existence of the joint ditch did not preclude either party from availing himself of other natural watercourses, though it did entitle both parties to the use of such ditch, and did forbid either from cutting the banks thereof.

IV. On this last branch of the case, however, it appears that the plaintiff not only conducted the water from the ditch to the pond, but that he cut the bank and dammed up the old joint ditch immediately south of the point of junction with his own ditch, so as to force all the water through his new ditch, and so as to prevent the passing of any waters farther south along the old joint ditch. The trial court sustained such action on his part, and refused to enjoin the maintenance of such dam.

In this respect, we think the trial court was in error. While the plaintiff had the right to use his own watercourse for such water as it would naturally take, he had no right to obstruct the flow in the original ditch, or to interfere with its efficiency by cutting the bank. To this extent, the decree entered below will be modified, and the plaintiff will be enjoined from maintaining any obstruction thereto. What the respective duties of the parties may be as to the joint maintenance of such ditch by keeping the same open and by removing the silt therefrom, is a question not involved in the issues, and we make no suggestion thereon.

We do not overlook that the defendant has prayed for damages, in the event that his right to injunction is sustained. The evidence on the question of damages has been predicated upon the theory of the wrongfulness of the diversion of water over the plaintiff's alleged watercourse. Inasmuch as we sustain the right of diversion to the extent indicated, the evidence is not in such condition as to enable us to say what special damages, if any, were sustained by the defendant merely by reason of the damming of the old ditch. The defendant will, therefore, be allowed nominal damages only.

With this modification, the decree below will be affirmed. The costs in this court will be apportioned equally.—*Modified and affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.