W. L. RILEY, Appellee, v. BOARD OF TRUSTEES OF POLICEMEN'S PENSION FUND et al., Appellants.

No. 39954.

JANUARY 14, 1930.

REHEARING DENIED MAY 16, 1930.

*Charles Hutchinson* and *Chauncey A. Weaver*, for appellants.

*A. L. Steele* and *Thomas A. Cheshire*, for appellee.

GRIMM, J.—It appears from the record that the plaintiff has lived in the city of Des Moines for more than a quarter of a century, and that, at various times for many years, as will appear more in detail hereafter, he served on the police force in the city of Des Moines, which is a municipal corporation of the first class, established and acting under a commission form of government.

The defendants, being the chief of police, city treasurer, and city solicitor in the city of Des Moines, are *ex officio* the duly qualified and acting trustees of the policemen's pension fund of the city of Des Moines.

Riley served as a policeman in said city from October 16, 1903, until December 10, 1914, at which time he was dismissed from service, under charges. He appealed to the civil service commission, and from there to the district court, under certiorari. From there he appealed to this court, and on December 11, 1917, in *Riley v. Crawford*, 181 Iowa 1219, the plaintiff was finally defeated. There is no showing that Riley ever thereafter passed the civil service examination and was placed on the eligible list, as provided by law. Notwithstanding this, however, on January 1, 1919, Riley was given employment by the city council, to perform some duties ordinarily performed by a police officer.

On August 12, 1923, Riley became physically incapacitated for service, and withdrew from police activities on account of a cerebral hemorrhage, which (it is admitted in this case) came upon him while he was walking his beat as a policeman in the city of Des Moines. On or about the 28th day of January, 1924, he made a written application to the board of trustees of the policemen's pension fund for a pension. On the 31st day of

January, 1924, the following order was made by the said board of trustees:

"In the matter of the application for pension by W. L. Riley, patrolman, before the trustees of the policemen's pension fund of the city of Des Moines, Iowa.

"Now, on this 31st day of January, 1924, this matter comes on for hearing upon the application of W. L. Riley to be retired on pension, all of the undersigned trustees being present. And, after hearing the testimony and being fully advised in the premises, the board of trustees of the policemen's pension fund of the city of Des Moines finds that the said W. L. Riley is not entitled to be retired on pension, and his application for such pension is, therefore, denied.

"John B. Hammond, Chief of Police.
"Emmett C. Powers, City Treasurer.
"Reson S. Jones, City Solicitor."

On April 9, 1925, the plaintiff sought by mandamus to secure this retirement pension. The lower court found in his favor, and this court, in *Riley v. City of Des Moines,* 203 Iowa 1240, reversed the case, holding, in substance, that the action should have been by certiorari, instead of mandamus. On the 19th day of July, 1927, the plaintiff filed with the defendant board of trustees a *second* application for pension by reason of his said disability. On the 4th day of August, 1927, the said board made a finding, the substance of which is that, after hearing the evidence and arguments of counsel, the board finds Riley not entitled to be retired upon a pension; that, on account of the ruling made by the board on January 31, 1924, it is without jurisdiction to entertain this second application, and the same is dismissed.

On August 6, 1927, Riley issued out a writ of certiorari to review the action of the police pension board. On September 12, 1927, a motion to quash, filed by the defendant in said cause, was overruled by the trial court, and an appeal was taken to this court, which, on December 14, 1928, resulted in a ruling by this court that, under the circumstances, a motion to quash was not an appealable order. See *Riley v. Board of Trustees,* 207 Iowa 177. In February, 1929, the trial court sustained the certiorari writ, and issued a mandatory order directing the

policemen's pension board to place Riley's name on the pension roll at the rate of $75 per month, and issued an order that a warrant be drawn, covering back pension, in the sum of $4,575. It is an appeal from this ruling which is before us in this cause.

I. One of the principal contentions of the appellants is that the ruling of the board of trustees of the policemen's pension fund on January 31, 1924, is *res adjudicata*. At the outset it will be noted that, instead of seeking a review of that action of the board's by certiorari, the plaintiff brought an action in mandamus, seeking to compel them to act in his favor, and when beaten by this court, he then filed a *second* claim before the board. It will thus be seen that the first decision of the board has never been questioned in a manner prescribed by law. Section 6315, Code of 1927, provides:

"Any member of said department * * * who shall while a member of such department become mentally or physically permanently disabled from discharging his duties, shall be entitled to be retired, and upon retirement shall be paid out of the pension fund of such department a monthly pension equal to one half the amount of salary received by him monthly at the date he actually retires from said department."

Section 6316 is as follows:

"No member who has not served five years or more in said department shall be entitled to be retired and paid a pension under the provisions of this chapter, unless such disability was contracted while engaged in the performance of his duties, or by reason of following such occupation. The question of disability shall be determined by the trustees upon the advice of a physician appointed by the board of trustees for that purpose. After any member shall become entitled to be retired, such right shall not be lost or forfeited by discharge or for any other reason except conviction for felony."

It is claimed by the appellee that, because there is no showing that the board, on its first hearing, procured the advice and counsel of a physician, therefore its finding is void. It will be noted that the question of disability is one to be determined by the trustees, and in passing upon the question, they act in a quasi judicial capacity. The law constitutes this board the trial

court, to determine, among other things, the question of disability. The legislature no doubt contemplated that greater efficiency would be obtained in passing upon these questions of disability if the board procured the advice of a physician, but it by no means follows that the action of the board in determining the question of disability without the advice of a physician is void. It was, at most, an irregularity, which might have been corrected. The plaintiff, if dissatisfied with the action of the board because a physician was not called, or for any other reason, should have sought redress by certiorari. He cannot now be heard to complain that the said action of the board was void for the reason that a physician was not called. It was the right of Riley to have the action of the board reviewed by certiorari. See *Home Sav. & Tr. Co. v. District Court,* 121 Iowa 1.

"It seems to be fundamental that, when a new jurisdiction is created by statute, and the court or officer exercising it proceeds in a summary mode, or in a course different from the common law, and a remedy for the revision of its exercise is not given by the statute creating it, certiorari from a court having general superintendence and control over inferior jurisdictions will lie for its revision."

This doctrine was approved by this court in *Gaffney v. Young,* 200 Iowa 1030. Riley failed to avail himself of his remedy to have a review of the action of the pension board, taken without the advice of a physician.

II. In answer to the contention of the appellants that the decision of the board in January, 1924, is *res adjudicata,* the appellee contends that the right of the plaintiff is what is sometimes called a "continuing right." It seems to be the position of the appellee that the plaintiff could file as many claims as he saw fit, and, notwithstanding an adverse ruling on each, he could continue filing claims during his lifetime. In support of this doctrine we are cited to *Gaffney v. Young,* 200 Iowa 1030. In that case, which was in certiorari, to review the action of the board of trustees of a policemen's pension fund, refusing a pension to a widow on account of the death of her husband, it appears that the death occurred in January, 1922, and the plaintiff's claim for a pension was not filed until in September, 1924.

It was asserted by the defense that the claim to a pension was barred by the statute of limitations. The court said:

"The act providing for the creation of the pension fund and for the payment of pensions from it fixes no limit of time within which application for a pension must be made, or action to enforce the right commenced. * * * The right was and is a continuing one, and, so far as present and future payments are concerned, we are of the opinion that it was one which she could enforce at any time, upon proof of the facts sustaining it."

The *Gaffney* case is clearly distinguishable from the one at bar. In the *Gaffney* case the court decided only that the application for a pension could be filed at any time; but there is nothing in the *Gaffney* case to the effect that, after a claim is once filed and passed upon, it can again be filed for consideration. The right to a pension, if it exists, is a continuing one, and can be asserted at any time; but if the claim is once made, and it is decided adversely to the claimant by the proper board, acting in a quasi judicial capacity, then the right no longer continues, for it has been terminated by judicial action. In the case at bar, Riley might have waited for months, or perhaps years, before filing his claim for a pension, and the right, if any he had, would be continuing, in the sense designated in the *Gaffney* case. But after he has once filed his application and has received a determination of his claim adverse to him, then that particular right, thus litigated, no longer continues.

III. We now come to a consideration of the question whether the action of the board in 1924 became *res adjudicata*. An examination of Chapter 322, Code of 1927, which is, in all essentials, the same as the law existing at and prior to the time of this first hearing by the board, does not disclose any special procedure by which the board shall be guided in the transaction of its business. There is no provision for a notice to the party filing the complaint or application for pension, nor does the law even provide that he shall be present. Neither does the law require that any record shall be made of the findings of the board. The record here discloses the application, as made by Riley, and also shows that the board of trustees made and filed a finding which recites, among other things, that Riley's claim came on for hearing, and that the board heard the testi-

mony, and, being fully advised in the premises, found Riley not entitled to be retired on a pension. This finding by the board was a quasi judicial determination. By Section 6321, of Chapter 322 of the Code of 1927, the legislature provided that the board might, from time to time, re-examine those who had been retired, in order to enable the board to ascertain whether such disability yet continued, and whether such retired member should be continued on the pension roll. In that sort of a proceeding, the statute provided for reasonable notice to the party to be examined, and also provided for the taking of testimony. In the following section (Section 6322), the legislature provided that:

"The decision of such board upon such matters shall be final and conclusive, in the absence of fraud, and no appeal shall be allowed therefrom."

There is in the statute no provision for a notice to the applicant of the hearing on his application for retirement and a pension. The rule which forbids the reopening of a matter once judicially determined by competent authority applies as well to the judicial and quasi judicial acts of public officers and boards as to the judgments of courts having general judicial powers. *Dennison v. Payne*, 293 Fed. 333. It follows that we must test this action by this board of trustees in substantially the same manner as we would test the same action by a trial court, to ascertain whether the result obtained is *res adjudicata*.

Briefly stated, this doctrine of *res adjudicata* is that an existing final judgment or decree, rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit. 15 Ruling Case Law 949.

An examination of the finding of the board discloses that it was a final judgment or decree. According to the recitation contained in the record, the decision was reached upon the merits, after hearing the testimony and the arguments, and being fully advised in the premises. There is no showing in the record that there was fraud or collusion in the procurement of the judg-

ment. This board was a court of competent jurisdiction, definitely authorized by statute to act. The question of the disability of the applicant became, by statutory provision, clearly within the jurisdiction of the board, and we think its action was *res adjudicata*. The finding does not disclose the ground upon which the board based its determination, and it is not for us to inquire. The board might have concluded that he was not disabled. It may have concluded that the disability, if he had it, was not contracted while he was engaged in the performance of his duties. The mere fact that it is agreed between counsel in this case that the disability came to the plaintiff while actually in discharge of his duties as an officer has no bearing upon what may have been before this first board. The record does not disclose what evidence was produced, or by whom. The board may have reached the conclusion that Riley was not eligible to a pension, in any event, because not then acting as a policeman in civil service. Whatever may have been the basis for its finding is not material here. Suffice it to say that a court of competent jurisdiction, without fraud or collusion, rendered a decision upon the merits on a matter within its jurisdiction, and, as it was not questioned, as required by law, it is final. Riley's unsuccessful attempt to secure a writ of mandamus had no effect on his rights.

It is not material here whether the reasoning adopted by the board was sound or not. In fact, it may have acted without giving any reasons whatever; nor does the judgment lose its effectiveness from the mere fact that it may have been irregular, or even that the board was in error in reaching its conclusion. Inasmuch as the board had jurisdiction, its finding, until reversed, is binding upon all parties. This is not a case, as is contended by the appellee, in which this board of trustees acted only in a ministerial capacity. It is for the board to determine all the essential elements that enter into the maturing of a claim against the fund. We think the finding of the board in 1924 is *res adjudicata* of the claim then filed.

IV. We now come to a consideration of the question whether this claim is, in law, the same as the one adjudicated in 1924. The language of the application filed in 1924 contains, among other things, the following:

"That he served until the 12th day of August, 1922 [as

a policeman], when he became sick and disabled, and has ever since been continually sick and disabled; that his sickness came from a stroke of paralysis. * * * That his condition is such now that he is unable to perform the duties of a policeman, on account of said stroke of paralysis.''

The application of July 20, 1927, contains, among other things, the following:

"That he was employed by the city of Des Moines, Iowa, on or about January 1, 1919, and served continuously as a member of the police department in the city of Des Moines, Iowa, until the 12th day of August, 1922, when he, while on duty, was stricken with cerebral hemorrhage, which immediately and permanently rendered him physically unfit to perform the duties of a policeman.''

The case was tried below and presented here upon the assumption of both parties to the controversy that the same physical ailment was involved in both applications. What is called in the one case cerebral hemorrhage, and in the other case a stroke of paralysis, is treated as one and the same thing. There is in this latter application no allegation of a new or different ailment or disability from the one disposed of by adjudication on the claim first filed. The parties are the same. The remedy sought is the same in each case.

V. Many other questions have been raised, some of which have been elaborately and exhaustively argued; but we do not regard a decision of any of them necessary or important to a final determination of this cause. It is our conclusion and finding that the determination of the board of trustees on the claim filed in 1924 was *res adjudicata* of all matters covered by the claim of 1927. The plaintiff, perhaps unfortunately for him, sought relief from this decision of 1924 by action of mandamus. Failing in this, he sought to file a *second* claim, doubtless upon the theory that he had a continuing right, notwithstanding the determination of 1924. In this he was mistaken. Not being satisfied with the ruling on the first application for a pension, he should have brought the matter into review by certiorari. Since he failed to do so, this final judgment of a quasi judicial

board having jurisdiction over the subject-matter is final, and the cause must be, and is,—*Reversed.*

EVANS, FAVILLE, ALBERT, and KINDIG, JJ., concur.

MORLING, C. J., concurs in result.