BOARD OF SUPERVISORS OF POTTAWATTAMIE COUNTY et al., Appellants, v. BOARD OF SUPERVISORS OF HARRISON COUNTY et al., Appellees.

No. 40961.

658

February 9, 1932.

Rehearing Denied June 24, 1932.

John P. Organ, for plaintiffs, appellants.

Geo. H. Mayne and J. J. Hess, for interveners.

Frank Tamisiea and Robertson & Wolfe, for appellees.

Kindig, J.—Generally speaking, Pigeon Creek drains a valley extending through Harrison and Pottawattamie Counties. Harrison County is immediately north of, and adjacent to, Pottawattamie County. The aforesaid stream, so far as the record is concerned, arises at an indefinite point either in Harrison or some other county above it, and runs in a southwesterly direction through all or part of Harrison County into Pottawattamie County, through which it continues southwesterly until finally emptying into the Missouri River.

Three drainage districts have been established in the valley of Pigeon Creek for the purpose of straightening the stream to afford better drainage for the adjacent land and protect the same from overflow. Pigeon Creek Drainage District No. 2, in Pottawattamie County, established in 1903, skirts the Missouri River and is bounded thereby on the south and west. That district is represented by the Pottawattamie County Board of Supervisors, who are the plaintiffs and appellants in this case.

J. H. Mayne et al., interveners and appellants, are land-

owners in Pigeon Creek Drainage District No. 2, and consequently, so far as this litigation is concerned, they have interests identical with those of the plaintiffs-appellants. For convenience, said plaintiffs and interveners hereafter will be referred to as the appellants.

Immediately adjacent to and northeast of Pigeon Creek Drainage District No. 2 is Pigeon Creek Drainage District No. 8, extending northeasterly along the valley of Pigeon Creek to the north line of Pottawattamie County and the south line of Harrison County. Said district was established in 1910. North and east of Pigeon Creek Drainage District No. 8 is the Harrison County District along Pigeon Creek, represented in this litigation by the Harrison County Board of Supervisors, the defendants-appellees. The latter ditch was established in 1920. This district extends from the Harrison-Pottawattamie County division line northeasterly along Pigeon Creek to a point approximately five and one-half miles from the division line.

In 1924, the Pottawattamie County Board of Supervisors determined to repair the drainage improvement in District No. 2 by cleaning out the upper channel or ditch (the portion thereof farthest from the Missouri River), and reconstructing the levees along the same. Accordingly, contracts were let and the work completed. Hence, that is one item of the costs involved in this litigation. Another item thereof is additional right of way condemned for the construction of new levees. These two items, generally speaking, contain the costs involved for the work authorized in 1924.

Thereafter, in 1925, the Pottawattamie County Board of Supervisors again authorized additional work on the lower part of the ditch or channel (the portion nearest the Missouri River). Such work consisted of the removal and reconstruction of levees along the lower ditch. Thus it is seen that the so-called upper portion of the work was authorized by the Pottawattamie County Board of Supervisors in 1924, while that Board initiated proceedings for the improvement of the lower portion of the ditch in 1925. That difference in dates of authorization becomes material because the statute allowing the distribution of assessments between upper and lower districts was changed after the first work, but before the second was initiated. When the first work was authorized, Section 1989-a24 of the 1913 Supplement to

the Code and Chapter 332, Acts of the Thirty-eighth General Assembly, were in force. See Mayne v. Board of Supervisors, 208 Iowa 987. This legislation contained the following provisions:

Section 1989-a24, 1913 Supplement to 1897 Code:

"When two or more districts shall have their outlet or discharge into the same natural watercourse or stream and it shall become necessary to deepen or enlarge said natural watercourse or stream, each district shall be assessed for the cost of such work in the same ratio to such total cost as the discharge of waters of such district bears to the combined discharge of waters of the several districts emptying into said natural watercourse or stream * * *."

Chapter 332, Acts of Thirty-Eighth General Assembly:

"When it shall become necessary hereafter to clean out, enlarge, deepen or widen any ditch or drain of any levee or drainage district; which ditch or drain has heretofore been established and constructed or which shall hereafter be established or constructed, and into or through which any of the waters of any other levee or drainage district * * * carrying the combined discharge of water, shall be assessed for the cost of such work in the same ratio to such total cost as the discharge of waters of such district bears to the combined discharge of waters of the several districts flowing into or through such a ditch or drain. And when it shall become necessary hereafter to extend any ditch or drain of any levee or drainage district, * * * including the district carrying the combined discharge of water, shall be assessed for the cost of such work in the same ratio to the total cost as hereinbefore provided."

In October, 1924, and before the 1925 work had been authorized and contracts therefor let, the above-quoted statute was amended, and became Section 7563 of the 1924 Code. The amended section, as now set forth in section 7563 of the 1924 Code, so far as material reads as follows:

"* * * Each district shall be assessed for the cost of such work in proportion to the *benefits* derived." (The italics are ours).

It is to be noticed that the old law required distribution of such costs among the districts according to the ratio of water discharged by each district, while the new legislation makes benefits the basis for the division of such costs. After the upper and lower work above designated had been let, the statutory commissioners in drainage district No. 2 were asked by the county supervisors, in accordance with Section 7564 of the 1924 Code, to make a reclassification of lands for assessment purposes in the district. Such reclassification was made and objections were filed to the assessments thereunder by landowners in the district. A hearing was had on the objections, but the board of supervisors sustained the commissioners. From that ruling, certain property owners appealed to the district court of Pottawattamie County, where the ruling of the county supervisors was sustained. An appeal was taken to this court from that ruling of the district court. See Mayne v. Board of Supervisors (208 Iowa 987), supra.

One objection of the property owners to the assessment confirmed by the district court in the Mayne case was that the costs of the foregoing improvement should be distributed among the various districts above named in accordance with Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly, both previously quoted. That contention was sustained by this court, as shown by the foregoing Mayne case. Following that decision commissioners were appointed in drainage district No. 2 to apportion the costs of both improvements among the three districts on the theory of Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly.

On November 1, 1929, the Pottawattamie County Board of Supervisors reviewed the findings of the commissioners and made an apportionment among the three districts in accordance with their recommendation. As a result of that proceeding, the amounts fixed for the three districts were respectively as follows: Harrison County District, represented by appellees, $6,856.94; District No. 8 in Pottawattamie County, $17,142.35; District No. 2 in Pottawattamie County, $18,856.59. A claim for the amount allotted to the Harrison County District was then presented by the Pottawattamie County Supervisors, representing Pigeon Creek District No. 2, to the Board of Supervisors of

Harrison County, representing the Harrison County District on Pigeon Creek. The Harrison County Board refused to make the assessment according to the apportionment, or on any other basis, and the present action was commenced December 12, 1929, to compel the Supervisors of Harrison County: First, to allow the claim against the Harrison County District; and, second, to make an assessment against the land in the Harrison County District for the purpose of covering the aforesaid sum apportioned to that district.

Following a hearing in the district court in the case at bar, appellants' relief was denied and their petition dismissed. Consequently they appeal.

At the outset, it is argued by the appellees that the ruling of the district court should be sustained because Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332 of the Thirty-Eighth General Assembly have been repealed by Section 7563 of the 1924 Code. Because of the repeal, appellees maintain that the apportionment of the aforesaid costs should have been according to the benefits, under the new law, rather than in the ratio of water discharged by each district, under the old law. It is true, as before suggested, that the costs were apportioned according to the old law. Justification for this method of procedure, appellants say, can be found in Mayne v. Board of Supervisors (208 Iowa 987), supra. The Mayne case held, under the record there presented, that the apportionment of said costs should be made according to the water discharged, under Section 1989-a24, 1913 Supplement to the Code, and Chapter 332, Acts of the Thirty-Eighth General Assembly. In the litigation culminating in the Mayne case, however, the appellees in the present suit were not parties, nor are they privies to any party in that suit. Hence appellees assert they are not bound by the judgment entered in the above-named Mayne case. This situation, for the purposes of our consideration, divides the costs of the improvement in District No. 2 into three elements: They are: First, the improvements authorized in 1925; second, the improvements initiated in 1924, except the expenses of the new right of way; and, third, the expenditures for the new right of way, under the improvement authorized in 1924.

I. Is the controversy determined by Mayne v. Board of Supervisors (208 Iowa 987), supra, so far as it relates to

the so-called 1925 work? Manifestly that case does not determine this portion of the controversy under the circumstances. This is true because the appellees were not parties to that litigation. Moreover, as before suggested, they were not privies to any party in that suit. Appellees, therefore, are not barred by the Mayne case from raising the issue now under consideration. The elements of *res adjudicata* are not present. As said in Riley v. Board of Trustees of Policemen's Pension Fund, 210 Iowa 449, reading on page 455:

"* * * this doctrine of *res adjudicata* is that an existing final judgment or decree, rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit."

Obviously, then, the Mayne case is not an adjudication of, or authority controlling, the present point under discussion.

It is unfortunate that all the interested parties were not brought into the Mayne case, in order that each would be bound by the decision. That, however, was not the case, and consequently it is necessary to dispose of the present litigation accordingly.

Regardless of what the evidence may have been in the Mayne case, there is no doubt under the record now submitted that the so-called 1925 work was initiated, authorized, and contracted for long after Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly, were repealed. Necessarily, then, so far as the 1925 work is involved, that legislation was not in existence. Hence, it could not be a basis on which to assess for the 1925 work. Section 7563 of the 1924 Code was the law that controlled the assessment so far as the 1925 work is concerned. Under that section, the cost of the work must be distributed among the various districts in accordance with the benefits received by each. Appellants, in the case at bar, it is to be recalled, assessed the benefits under Section 1989-a24, 1913 Supplement to the Code, and Chapter 332, Acts of the Thirty-Eighth General

664

Assembly. Therefore, the cost distribution was upon the theory of the amount of water discharged by each district.

After the repeal of the old law and the enactment of the new, there is no basis for this theory of distribution so far as the 1925 costs are concerned. Error is presumed, and appellants have not shown that the apportionment of the cost would be the same under each theory. Consequently, because the repeal of the old laws was overlooked in the distribution of costs for the 1925 improvement, appellants are not entitled to relief thereon. The district court, then, properly refused to allow the claim or compel the assessment of taxes therefor so far as the 1925 improvement is involved.

II. Notwithstanding the foregoing situation so far as the 1925 improvements are concerned, appellants argue that they are entitled to relief because of the 1924 improvements. For the purpose of convenience, as before said, we are excluding from this consideration the costs incident to the purchase of the new right of way for the 1924 improvement.

Appellees insist that such relief can not be granted for the 1924 improvements because Section 1989-a24, 1913 Supplement to the Code, and Chapter 332, Acts of the Thirty-Eighth General Assembly, are unconstitutional and void. As a basis for the unconstitutionality, appellees first declare that those laws did not require notice before the improvement was made or the assessment allowed therefor. Hence, appellees conclude that such laws are in contravention of Sections 9 and 18, Article I, of the Iowa Constitution, as well as Section 1 of the Fourteenth Amendment to the Constitution of the United States. This contention, in effect, has been previously determined adversely to appellees' claim. Board of Trustees of Monona-Harrison Drainage District No. 1 v. Boards of Supervisors of Woodbury and Monona Counties, 198 Iowa 117; Breiholz v. Board of Supervisors, 186 Iowa 1147, 257 U. S. 118. See also Mayne v. Board of Supervisors (208 Iowa 987), supra.

Section 1989-a21 of the 1913 Supplement to the Code provides:

"Whenever any levee or drainage district shall have been established and the improvement constructed as in this act provided, the same shall at all times be under the control and supervision of the board of supervisors and it shall be the duty of

the board to keep the same in repair and for that purpose they may cause the same to be enlarged, reopened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby. The cost of such repairs or change shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same proportion that the original expenses and cost of construction were levied and assessed, except where additional right of way is required or additional lands affected thereby, in either of which cases the board shall proceed as hereinbefore provided; * * *''

No notice therefore is required before the assessment contemplated by the above-quoted statute. The Supreme Court of the United States, in Breiholz v. Board of Supervisors (257 U. S. 118), supra, held that a levy of assessment under that legislation did not constitute the taking of property without due process of law. Likewise, the United States Supreme Court decided that the failure of the Iowa law to provide for notice is not fatal under the Constitution for the reason that ''it only requires a simple calculation to determine the amount of each assessment when the cost of the improvement is once determined.'' Therefore, the Supreme Court of the United States concluded that the process to determine the assessment under the aforesaid section of the 1913 Supplement ''is a legislative declaration that the land will be benefited, and that in such case notice and hearing before such a legislative determination is not necessary.''

Section 1989-a21 of the 1913 Supplement of the Code, thus held constitutional by the Supreme Court of the United States on objections similar to those now urged by appellees, is by analogy similar to the above laws which are the basis for the assessment in controversy. Board of Trustees v. Board of Supervisors (198 Iowa 117), supra, local citation 122. When the Harrison County district was organized, Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly, had been adopted and made effectual. So those who organized the Harrison County district

impliedly undertook to assume all the burdens cast upon them by existing laws, including those here under consideration. Consequently the landowners in Harrison County, when receiving notice that the drainage district would be organized and assessments on their land made therefor, were warned that those assessments might include the expenses involved in the case at bar. Both Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly, are controlled by the chapter on drainage containing the above-quoted Section 1989-a21 of the 1913 Supplement, which was before the Supreme Court of the United States. Each district fixes its own classification for the purpose of assessing benefits against the lands therein contained. After that is done, the apportionments of benefits contemplated by Section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly, are assigned to each individual district and are spread over the classification of benefits as an assessment.

Further discussion of the question is not necessary, because, as before explained, the matter in principle at least has been determined by the foregoing cases.

Wherefore the acts are not unconstitutional for the first reasons assigned by appellees.

■ There is no contention that the apportionment of flowing waters was not properly made, as required by statute. Nevertheless, it is claimed that the statute is unconstitutional because the landowners in the Harrison County district had no notice of, and opportunity to appear at, the meeting of the commissioners who fixed such apportionment. Yet it is not necessary to discuss the proposition because the appellees, in their answer, admitted the allegations in the appellants' petition, stating that such apportionment was made according to the statute. See Board of Trustees v. Board of Supervisors (198 Iowa 117), supra. If, then, such apportionment was made according to the statute, no prejudice in any event could arise because no notice of the aforesaid meeting was given the landowners in the Harrison County District. The statute expressly declares that the apportionment shall be made in the ratio of the flowing waters from the several districts. Consequently the last-named con-

stitutional question is not here considered. See, however, Board of Trustees v. Board of Supervisors (198 Iowa 117), supra.

III. Again it is said by appellees that section 1989-a24 of the 1913 Supplement to the Code and Chapter 332, Acts of the Thirty-Eighth General Assembly, are unconstitutional for the reason that they require the landowners in the Harrison County District to pay assessments for a purpose from which they receive no benefits. So appellees argue the laws in question do not afford such landowners in Harrison County due process of law, and confiscate their property without compensation.

Underlying appellees' contention is the thought that an assessment based upon the ratio of water discharged is not necessarily consistent with the benefits received. Clearly the aforesaid contention that the acts named are unconstitutional is not sustained in this record. See Mayne v. Board of Supervisors (208 Iowa 987), supra. The basis of appellees' argument is that their district, being the upper one, is higher than either of the lower districts. Consequently they say that the water will always flow unobstructed from the Harrison County District through District No. 8 in Pottawattamie County into District No. 2 therein. An outlet, therefore, is perpetually assured to appellees, they maintain. With that assurance they proceed in an attempt to demonstrate that they have not received, and can in no event receive, benefits from improvements made in District No. 2.

It is possible to imagine a situation where an upper of several drainage districts located contiguously, as the ones involved are situated, could be vitally concerned about its outlet into the lower districts. To illustrate, the land might be so level that with slight obstruction the water would back from the lower districts into the upper. Improvements, then, in the lower districts would be beneficial to the upper districts if they removed any obstruction that was backing the water over the higher district. Under the assumed facts, the very outlet of the upper district would be in jeopardy, and in fact filled or banked. Resultantly it is easy to understand that benefits would arise under those circumstances if improvements were made in the lower district to remove the defect. In the case at bar, however, the facts are not as those assumed.

The question then is, Does the Harrison County District

receive any benefits for which the land therein can be assessed to pay for the 1924 improvements constructed in Pottawattamie District No. 2? Appellants argue that such benefits do exist because, through the drainage improvements, the Harrison County District, by straightening Pigeon Creek, is now permitted to send down through the valley over the lower districts an avalanche of water at flood times in a way that it could not have done except for the drainage districts. This greatly in- ' creased volume of water during flood times, it is said, made necessary the cleaning out of the channel and the reconstruction of the levees in District No. 2. Also it is claimed by appellants that such increased volume of water in the Harrison County District flows at a much greater velocity into the lower districts because Pigeon Creek in Harrison County has been straightened for several miles.

By way of answer to that contention, appellees declare that the landowners in the Harrison County District represent the dominant land and consequently that dominant land has a right to drain its waters onto or over the servient land, which is represented by the lands in the Pottawattamie County Districts. Generally speaking, it is true that the dominant landowner may drain surface and subterranean waters from his lands through natural watercourses and ravines in the regular course of drainage onto and over the servient lands. Livingston v. McDonald, 21 Iowa 160; Vannest v. Fleming, 79 Iowa 638; Wharton v. Stevens, 84 Iowa 107; Schrope v. Trustees of Pioneer Township, 111 Iowa 113; Genesor v. Healy, 124 Iowa 310; Brown v. Armstrong, 127 Iowa 175; Matteson v. Tucker, 131 Iowa 511; Pohlman v. Chicago, M. & St. P. Railway Co., 131 Iowa 89; Sheker v. Machovec, 139 Iowa 1; Tennigkeit v. Ferguson, 192 Iowa 841; Thompson v. Board of Supervisors, 201 Iowa 1099; Besler v. Greenwood, 202 Iowa 1330; Miller v. Perkins, 204 Iowa 782. It is said in Matteson v. Tucker (131 Iowa 511), supra, reading on page 516:

"By the civil law * * * where two adjacent tracts of land are not of a common elevation, the lower estate owes a servitude to the upper to receive all the natural drainage in its direction, and the lower cannot reject, nor can the upper withhold, the supply, except as this obligation may be modified by the reasonable demands of good husbandry. * * * This court has never

adopted either rule in its entirety, though the general principle of the civil law in this respect, and especially as applied to rural lands has frequently been approved. * * *''

Likewise in Thompson v. Board of Supervisors (201 Iowa 1099), supra, reading on page 1106, we again declared that the owner of the dominant land:

''* * * may freely avail himself of the topography of his land, and may discharge his surface waters wherever gravitation naturally carries them, without further concern on his part as to where they go; for they are no longer his.''

At first a rather strict limitation was placed upon this right of the dominant landowner to drain his land onto the servient land. When so doing, it was originally held that he could not increase the flow of the water from the dominant to the servient land. Williamson v. Oleson, 91 Iowa 290; Stinson v. Fishel, 93 Iowa 656; Holmes v. The County, 97 Iowa 360; Geneser v. Healy (124 Iowa 310), supra; Plagge v. Mensing, 126 Iowa 737; Keck v. Venghause, 127 Iowa 529; Dorr v. Simmerson, 127 Iowa 551; Priest v. Maxwell, 127 Iowa 744; Hull v. Harker, 130 Iowa 190; Wirds v. Vier Kandt, 131 Iowa 125; Obe v. Pattat, 151 Iowa, 723.

Later, however, that rule was somewhat modified and it has been held that there may be an increase in such flowage. Lyon v. Sac County, 155 Iowa 367; Tennigkeit v. Ferguson (192 Iowa 841), supra. Although, as above indicated, the early rule in Iowa was modified to the extent that the dominant landowner may, in the interests of drainage properly conducted, increase the flow of the water from his land onto servient land, yet there is a limit to such increase. Concerning this limitation, it was said in Martin v. Schwertley, 155 Iowa 347, reading on page 351:

''The rule announced in an early case in this state, that one person may not improve his land for the purpose of freeing it from surface water by throwing the water upon the land of another, to his injury, in a different manner from that in which it would naturally have flowed (Livingston v. McDonald, 21 Iowa 160), has been somewhat modified in the interest of agriculture, so that the upper proprietor may drain his land into

a natural water course without liability to a lower proprietor for resulting damages, although the effect of such drainage is to throw the surface water in somewhat increased volume at times on the land of the lower proprietor. * * * *But the principle has still been maintained that the upper proprietor may not discharge collected water upon lower land, even though in a water course, in an unusual manner or in unusual quantities. * * * And this is the general rule in this country.''* (The italics are ours).

To the same effect see Cresap v. Livingston, 193 Iowa 488. See also Beers v. Incorporated Town of Gilmore City, 197 Iowa 7, local citation 12. Again, in Baker v. Town of Akron, 145 Iowa 485, reading on pages 488-9, this court declared:

"We have adopted what is known as the civil law rule in the leading case of Livingston v. McDonald, 21 Iowa 160. The substance of that rule is that the owner of higher land has no right even in the course of the use and improvement of his property to collect the surface water upon his own lands into a drain or ditch, increased in quantity or in a manner different from the natural flow upon the lower lands of another to the injury of such lands. This case has been followed time after time, and was reaffirmed as late as the year 1906."

At this juncture it is important to consider Section 1989-a53, 1913 Supplement to the Code (now Section 7736 of the 1931 Code), which contains the following provision upon the subject under consideration:

"Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural watercourse, or into any natural depression, whereby the water will be carried into some natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person or persons or corporation. Nothing in this act shall, in any manner, be construed to affect the rights or liabilities of proprietors in respect to running waters or streams."

When construing that section, it has been said by this court that the legislation there enacted is merely a re-statement of the law "which heretofore existed in this commonwealth." Dorr

v. Simmerson (127 Iowa 551), supra, local citation, 554. For similar holdings, see Obe v. Pattat, 151 Iowa 723 (local citation 727) ; Jontz v. Northup, 157 Iowa 6 (local citation 12). After the passage of the statute above named, as thus interpreted, this court said in Miller v. Hester, 167 Iowa 180, reading on pages 184-5:

"The general rule is that the owner of the dominant estate may not, by artificial means, concentrate at one point surface water diffused over the surface of his land, and discharge it in a mass upon the lower land; but this rule does not apply to natural depressions or drainways through which the surface water on the higher land drains onto the lower land. The great weight of authority seems to be that the flow of surface water along such depressions or drains may be hastened and increased by artificial means, so long as it is not diverted from the natural course of drainage. The very purpose of drainage is to gather the water from the surface of the ground into a channel and discharge it at some particular point. Drainage would be wholly ineffectual in the accomplishment of its purpose if this were not permitted."

Reference there was made, of course, to the drainage of waters from land into a natural watercourse or into a natural depression. Following the passage of the statute, this court continued placing limitations upon the quantity and flow of water that could be discharged by a dominant landowner onto the servient estate. To illustrate, it was declared in Obe v. Pattat (151 Iowa 723), supra, reading on page 728:

"Even without a statute the rule of the adjudged cases is, as above stated, that the adjacent owner can not rightfully complain of the flow thereby cast upon him *unless it be in such greatly increased or unnatural quantities as to be the cause of substantial injury to his premises.*"

Likewise, this court stated in Jontz v. Northup (157 Iowa 6), supra, reading on pages 14 and 15:

"Suffice it to say, we do not think plaintiff has shown such an increase in the flow of water upon his land or such a change in the natural course of surface water as authorizes a recovery. There was no increase save as the ditch collected water which

theretofore spread out over the land and was evaporated or absorbed; but this is not sufficient to justify a recovery. Defendant did nothing with his land save to collect the water into a channel and discharge it into a natural swale or depression, and this he had the right to do *unless he substantially increased the volume of water or negligently discharged it so as to injure his neighbor.*" (The italics are ours).

So, too, this court indicated in Lamb v. Stone, 178 Iowa 1268, reading on pages 1273-4:

. "The rule that surface water is a common enemy, and that each owner of land has a right to protect and guard himself against it and its injurious effects upon his own land, has never been questioned. Everyone must exercise his right, however, with due regard to the rights of his neighbor; but we are not able to find in this case, from the record, that this small ditch, constructed as it was, at the place where it was, would have the effect of discharging the surface water that accumulated in the slough, upon the lands of the plaintiff in any greater quantity than it would be discharged had the ditch not been constructed."

A similar quotation may be made from Beers v. Incorporated Town of Gilmore City (197 Iowa 7), supra, reading on page 12:

"The law is well settled in this state that one may not gather surface or other waters in large quantities and discharge the same upon private property so as to cause damage thereto at a different place or in a different manner than the same would usually and ordinarily have gone, in the regular course of drainage."

27 Ruling Case Law, pp. 1151 and 1152, section 79. See also Pascal v. Donahue, 170 Iowa 315, and Conklin v. City of Des Moines, 184 Iowa 384.

Therefore it seems that the rule under the statute now is that the upper proprietor may drain his land through natural watercourses in a way to increase the water that is to flow over the servient land, providing the increase is not too great or in such unnatural quantities "as to be the cause of substantial injury." See cases last above cited. Thus a limit has been fixed by this court even when the drainage contemplated is under the

foregoing statute. What is meant by unusual manner and unusual quantities has not been defined. Undoubtedly much would depend upon the facts and circumstances of each case. However that may be, it is important here to note that there is a limit to the manner and quantity in which water may be drained by the individual landowner from the dominant to the servient land. In addition to the foregoing, it is to be recognized that although to a certain extent a dominant landowner may increase the flow of the drainage water which falls to the servient land, yet he cannot thus drain such water ''in a different manner than the same would naturally and ordinarily have gone in the regular course of drainage,'' and thereby do substantial damage to the servient estate. Beers v. Incorporated Town of Gilmore City (197 Iowa 7), supra; Holmes v. The County (97 Iowa 360), supra; Everett v. Christopher, 125 Iowa 668; Schofield v. Cooper, 126 Iowa 334; Priest v. Maxwell (127 Iowa 744), supra; Hull v. Harker (130 Iowa 190), supra; Matteson v. Tucker (131 Iowa 511), supra; Wirds v. Vierkandt (131 Iowa 125), supra; Cresap v. Livingston, 193 Iowa 488; Allen v. Berkheimer, 194 Iowa 871.

Consequently it appears that the individual landowner draining water on his own land cannot unusually increase the volume thereof onto the servient land, nor can he drain such water in an unusually or materially different way than the same naturally would run. But when the individual landowner organizes a drainage district with his neighbors and there is included in such district the lands of the various members thereof, the collective body, through the drainage district, may unusually increase the volume of the water from the dominant estate inclosed by the district onto the servient estate below, although the single individual of the group draining his own land could not so do. Likewise, those landowners in the dominant estate, when organized in a drainage district, may otherwise change the rule of drainage so far as it is applied to the individual landowners. For instance, when organized into such district the landowners may drain ponds, collected and gathered waters, and bring the waters from one watershed into another. That they could not have done as individuals. Maben v. Olson, 187 Iowa 1060; Prichard v. Board of Supervisors of Woodbury County, 150 Iowa 565. A paraphrase of the language of the

court in the Maben case (187 Iowa 1060), supra, is to this effect: A group of dominant landowners, organized into a drainage improvement by applicable provisions of the constitution and statutes relating to drainage district law, are authorized to and may lawfully establish a drainage district even if by so doing waters will be caused to come into the natural outlet for the district more rapidly and in greater quantities than if the land in the district were left to send the surface waters into said outlet without interference by a drainage system, and the increase in rapidity and volume of water may overtax the natural outlet and cause a damaging overflowing to lands below the entrance into such outlet (local citation, 1063).

Also this court declared in the Prichard case (150 Iowa 565), supra:

"Natural streams may be changed, and waters collected in one district of lands higher up the stream may be turned into ditches lower down, and the ditch thus used may be deepened or enlarged to meet the necessities of the case."

So, in the case at bar, the landowners in the Harrison County Drainage District could not have accumulated the water as individuals and then sent it down Pigeon Creek in the unusual increased velocity and quantity, and in the unusual way now done through the drainage district.

According to the record, the water now flows down Pigeon Creek from the Harrison County drainage district in an unusually increased volume and in an unusual way, thereby in instances greatly lowering the original depth of Pigeon Creek and destroying the drainage improvement of District No. 2 in Pottawattamie County. Thus it is apparent that the landowners in Harrison County, who are privileged to thus dispose of their water, are enjoying a benefit when organized in the drainage district that they could not have as individuals when draining their own lands. For, as individuals, they could not drain water from their respective lands onto the servient lands in unusual quantities or in an unusual manner. Obe v. Pattat (151 Iowa 723), supra; Jontz v. Northup (157 Iowa 6), supra; Lamb v. Stone (178 Iowa 1268), supra; Beers v. Incorporated Town of Gilmore City (197 Iowa 7), supra.

According to the record, the distance to be traveled by the

water has been shortened approximately one-half by the drainage improvement. The volume of the surface water passing through the district in flood times during a given period has increased from three to five times over that existing before the district was organized and the improvement made. Possibly the waters passing through the ditch during a single year are not greater than those which formerly ran down Pigeon Creek, the natural watercourse, during a similar period, but in flood times the waters going down the ditch during a single hour or day have been greatly and abnormally increased over the amount that would have gone down Pigeon Creek, the natural drainage, during a corresponding hour or day. Because of that greatly increased volume and velocity, great and substantial damage is done to the landowners in district No. 2. Their drainage improvements are destroyed and lands flooded. It must be understood that the landowners in the Harrison County District are not now merely draining their various lands into Pigeon Creek, the natural watercourse, but rather than that, they have constructed a straight ditch which varies considerably from the irregular line of the original creek and therein these property owners collect the waters from that creek and its tributaries into one straight channel, and thereby the same are forced, by gravitation, confinement, and pressure, onto district No. 2, at a highly increased velocity and in an unusual and abnormally increased volume. While the landowners in the Harrison County district are thus enjoying the privilege of sending onto the servient lands below the greatly and abnormally increased volume of water, the owners of those servient lands are, because thereof, bearing an increased burden. Partly because of that increased burden these owners of the servient lands are required to make the improvements in drainage district No. 2, now under consideration. Through those improvements constructed by the holders of servient lands in District No. 2, the greatly and abnormally increased volume of water aforesaid is carried. Therefore, the landowners in the Harrison County District are benefited. Moreover, as before said, the two sections of the statute imposing this burden upon the Harrison County district were in full force and effect at the time that district was organized. By implication, then, the landowners in Harrison County as-

sumed the burdens contemplated by those statutes when they organized into a drainage district.

Hence, a benefit accrues to the landowners in Harrison County because they are permitted in the manner and way aforesaid to dispose of the waters through the Pottawattamie County Districts. As said in Board of Trustees v. Boards of Supervisors (198 Iowa 117), supra, reading on page 125:

"Obviously, it is equitable that the drainage districts that . discharge their waters into said common outlet, and thereby necessarily contribute to its becoming clogged with silt and debris, should bear their proportionate share of the cost and expense of cleaning out said ditch and maintaining it in a proper manner for the successful operation of the several ditches discharging therein. The authority to so repair and improve said common ditch has been delegated by the legislature to the board of supervisors of the district in which said ditch is located. This the legislature had power to do."

Without bearing the partial burden of the repairs in the lower district, the upper district, under the holdings of this court, it may be assumed, could nevertheless run their waters onto the low districts if the legislature so authorized. Prichard v. Board of Supervisors (150 Iowa 565), supra, and Maben v. Olson (187 Iowa 1060), supra. This privilege of drainage through a servient district, the contention may be made, arises out of legislation under the Constitution. There is no reason, however, why the legislature must bestow such extraordinary privilege without the corresponding burden. The original right to organize a district is because of authority from the legislature. Upon granting such authority to organize a district, the legislature can bestow such privileges and impose such burdens within proper limitations as to it seems best. Then, if the legislature decides that the land in the dominant district cannot drain its waters in unusual quantities and in an unusual way over the lower districts without bearing a proper portion of the costs of repairs in the lower districts, the tax for such obligation may be imposed. There is a basis for the legislature's so imposing that burden because the upper district, in fact, under the circumstances, as before explained, receives the benefit. Under the record in the case at bar, there is a benefit to the Harrison

County District that will support an assessment to pay a portion of the costs in the lower district. Although a witness or two testified that there were no benefits, yet this evidence is of no value, for the reason that the testifier did not take into consideration the benefits above named which accrue to the Harrison County District because it is enabled to dispose of its waters into the lower districts "in an unusual manner and in unusual quantities." As before seen, the Harrison County District did receive benefits in the manner and way above outlined. If, then, the legislature elects to charge the upper districts with the proper portion of such costs, there is no constitutional reason why the same cannot be done. When so concluding, we do not hold that the ratio of waters discharged, as contemplated by Section 1989-a24, 1913 Supplement to the Code, and Chapter 332, Acts of the Thirty-Eighth General Assembly, is equivalent to the benefits received by the upper district.

 Appellants, as shown by a previous division of this opinion, have not proven that a tax levied on the basis of water discharged is equivalent to such tax imposed on the theory of benefits received. Although appellants. did not furnish such proof, appellees likewise have failed to prove that ratio of water discharged is not the equivalent of benefits. The burden to show unconstitutionality was upon appellees, who are claiming it. Before a statute will be declared unconstitutional, it must plainly, clearly, and palpably appear that the law is contrary to or in conflict with the Constitution. No presumption against the validity of a statute can be indulged in. Loftus v. Department of Agriculture, 211 Iowa 566; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, and other cases cited therein. Without furnishing the necessary proof, then, to show that the present statute is unconstitutional, appellees are not entitled to have the same so declared. Unless those necessary facts are supplied, a decision holding the act unconstitutional would be merely declaratory.

 But appellees continue their argument by declaring that there is no statute authorizing the board of supervisors in Pottawattamie County to levy an assessment there in behalf of Drainage District No. 2 against the landowners in the Harrison County Drainage District. Manifestly that is not what the board of supervisors of Pottawattamie County did. After the

classifications were made, as directed by Mayne v. Board of Supervisors (208 Iowa 987), supra, the Pottawattamie County Board, representing Drainage District No. 2, filed the allotment of the costs of the improvement in said district with the board of supervisors of Harrison County, who are the representatives of the Harrison County Drainage District. All this was done by the Pottawattamie County board of supervisors without any attempt on their part to assess lands in Harrison County.

Following the apportionment of the improvement costs in Drainage District No. 2, the Pottawattamie County Board of Supervisors merely presented the proper claim to the Harrison County Board for the amount of the total costs of said improvement which was to be borne by the Harrison County Drainage District. The procedure is outlined in the following language by this court in Board of Trustees v. Boards of Supervisors (198 Iowa 117), supra, reading on page 126:

"In one sense this board (in the case at bar the Pottawattamie County Board) might be said to be the agent of the several districts (in the case at bar District No. 8 in Pottawattamie County and the Harrison County District in Harrison County) using said common outlet for said purpose. It (the Pottawattamie County Board of Supervisors) reports to the boards of supervisors (here the Harrison County Board), who are the representatives of the said several districts (here the Harrison County board) the cost of cleaning out and repairing said outlet. Under the statute, the said boards of supervisors (here the Harrison County Board) are then to assess said costs (the amount allotted to Harrison County drainage district in the case at bar) against the lands in said districts on the basis of the original classification thereof, exactly as though said outlet ditch lay wholly within the local drainage district (the Harrison County District), and had been repaired and cleaned by the local board of supervisors (the Harrison County Board)."

Consequently the assessment for the allotment of the costs for improving drainage district No. 2 in the case at bar is to be made by the board of supervisors in Harrison County, so far as the Harrison County District is concerned.

■ Furthermore, appellees argue that neither Section 1989-a24, 1913 Supplement to the Code, nor Chapter 332, Acts of

the Thirty-Eighth General Assembly, apply here because the ditch in the Harrison County district does not run to the Pottawattamie County line. It appears that the channel in Pigeon Creek for about five and one-half miles was straightened to a point 328 feet north of the Pottawattamie County line. From that point on, the old creek channel remained. On the Pottawattamie County side of the line, district No. 8 also straightened the channel in Pigeon Creek, but did not extend such straightening quite to the Harrison County line. Nevertheless the waters from the straightened channel in the Harrison County District run through the Pigeon Creek channel into the ditch of District No. 8 in Pottawattamie County, and then into District No. 2, also in that county. Not only that, but the south boundaries of the Harrison County District come down to the line between Harrison and Pottawattamie Counties, and immediately across that line to the south is the territory of District No. 8 in Pottawattamie County. Clearly Pigeon Creek is the outlet for these districts and the waters from the Harrison County Drainage District run into and through the ditch or drain of the two Pottawattamie County districts. Appellees' contention, then, is without merit.

Under the entire record, therefore, it is plain that the district court wrongfully denied appellants relief so far as the above named 1924 improvements are concerned. By so designating the improvements, it is understood, of course, as before said, that the new right of way costs are not included. Appellants brought their action in proper time and therefore the same is not barred by the statute of limitations, as claimed by appellees. For the reasons discussed in this division, the judgment of the district court must be reversed because this particular relief was denied appellants.

IV. There is still reserved for consideration the question relating to the costs of new right of way purposes connected with the said 1924 improvement in drainage district No. 2.

It is argued by appellees that the district court correctly denied any relief to appellants so far as these right of way expenses are concerned. With that claim of appellees' and conclusion of the district court, we are constrained to disagree.

As before explained, Section 1989-a24, 1913 Supplement to the Code, and Chapter 332, Acts of the Thirty-Eighth General

Assembly, operate, by analogy, in a way similar to Section 1989-a21 of the 1913 Supplement to the Code. So far as material here, that section reads:

"The cost of such repairs or change [similar to those involved in the case at bar] shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same proportion that the original expenses and cost of construction were levied and assessed, *except where additional right of way is required or additional lands affected thereby*, in either of which cases the board shall proceed as hereinbefore provided."

The words "such repair or change" named in the quoted portion of said section, relate back to the word "repair" previously used in the same section. "Repair," as thus used, is defined by that section to mean "enlarge, reopen, deepen, widen, straighten, or lengthen for a better outlet." Such repairs, as thus defined, contemplate a cost, and that cost, according to the section, is to be distributed over the land "in the same proportion that the original expenses and cost of construction were levied and assessed, except where additional right of . way is required." Both the cost which is to be distributed in the same proportion as the original assessment, and that which is to be spread over the land in accordance with the theory announced for the occasion where land is taken for right of way purposes, arise, as definitely appears from the language of the section, under the "repairs" previously authorized therein. To put the thought differently, repairs, as previously defined in the section under consideration, may be paid for through assessments distributed: First, in the same proportion as the original expenses and costs of construction were levied and assessed; or second, where additional right of way is required, in the manner before provided in the chapter containing this section. By the use of the word "hereinbefore" in Section 1989-a21 of this Supplement, the legislature undoubtedly referred back to 1989-a12 thereof, relating to assessments, and other sections therein having to do with the condemnation or acquiring of property in a drainage district for right of way purposes. Clearly this is true because Section 1989-a21, as well as Section 1989-a12, refers to

the classification of lands for assessment purposes. See Nervig v. Joint Boards of Supervisors, 193 Iowa 909; Mayne v. Board of Supervisors, 178 Iowa 783. Said Section 1989-a12 provides first for the classification of lands for assessment purposes, and then the section further declares:

"This classification, when finally established, shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board, for good cause, shall authorize a revision thereof."

It is obvious that the exception contained in Section 1989-a21, supra, so far as material here, refers back to Section 1989-a12, rather than to the sections relating to other proceedings for the establishment of an original district. Throughout the chapter whenever the legislature desired to thus refer back to the original proceedings, it expressly so declared, as illustrated by Section 1989-a54. In other words, when Section 1989-a21 declares that when additional right of way has been taken the board shall proceed in making the assessment "as hereinbefore provided," reference is made to the classification for assessment purposes, suggested in Section 1989-a12, rather than to the sections prescribing notice for the property owners in the original establishment of the district. Obviously the legislature does not require that the landowners in the district whose land is not taken by the new right of way shall have notice before such right of way can be taken. Of course, the landowners whose land is actually taken for the new right of way must have notice in order that they may defend and make claim. But the other landowners in the district are not entitled to such notice. Those landowners whose land is not taken for the new right of way have no right to protest or object to the board's action in making the improvements authorized by Section 1989-a21 of the aforesaid Supplement. The landowners in the Harrison County district were not prejudiced in any way when the new right of way was taken from the landowners in District No. 2. All landowners in each district had the required notice when the district was established. Board of Trustees v. Boards of Supervisors (198 Iowa 117), supra; Breiholz v. Board of Supervisors (186 Iowa 1147), supra. Such notice included the information that in the future the Board would make improvements as con-

templated by Section 1989-a24 of the 1913 Supplement and said Chapter 332, Acts Thirty-eighth General Assembly. After the Harrison County ditch had been established, the board of supervisors retained jurisdiction to control and supervise the same for the purpose of levying an assessment for making the repairs in district No. 2, contemplated by the last-named section and chapter now in question.

As before suggested, the new right of way contemplated in Section 1989-a21 is by necessary implication a part of the repairs named by that section. Therefore said exception named in Section 1989-a21 of the Supplement concerning the assessment for right of way purposes has nothing whatever to do with the notice required in the original proceedings for the establishment of the district, and therefore the board may make repairs by enlarging, reopening, deepening, widening, or straightening the previous improvement constructed in the district, without such notice to any landowners (except to those whose land is taken). By analogy, then, the authorization to make the repairs named in Section 1989-a24 of the Supplement and said acts of the Thirty-Eighth General Assembly, includes the power by necessary implication to acquire a new right of way for the purpose of enlarging, cleaning out, deepening, or widening the improvement originally constructed in district No. 2. If an additional right of way is not taken, the cost may be assessed according to the original classification. When, however, such new right of way is taken and reclassification should be made, then the costs are to be assessed as provided in Section 1989-a12, supra. So, when, as indicated by the foregoing authorities, the board of supervisors, without violating constitutional guaranties, may proceed without notice under 1989-a21, when new right of way is or is not required, the same authorities on principle likewise without violating constitutional guaranties necessarily sustain the board's proceeding under Section 1989-a24 of the Supplement and said acts of the Thirty-Eighth General Assembly without notice (except to those whose lands are actually taken), when such right of way is required. This being true, the district court should have compelled the taxpayers in the Harrison County District to bear their portion of the costs for the new right of way in District No. 2. Mayne v. Supervisors (208 Iowa 987), supra.

Other questions are argued, but they are not of sufficient consequence to change the result.

Because of our conclusion in this case, it is apparent that the action of the district court in refusing to levy an assessment on the lands in the Harrison County district to cover the alleged portion of the costs for the 1925 improvement in Drainage District No. 2 must be affirmed, but the action of that court in disallowing the apportionment of costs for the 1924 improvement in that district is reversed. In fact, the allowance of the costs was made by the Pottawattamie Board of Supervisors in Drainage District No. 2. Therefore, under the circumstances, the only action the Harrison County Board can take is to spread an assessment over the lands in the Harrison County district to raise funds for the proper portion thereof, as determined by the Pottawattamie County Board. It is not certain whether the district court can separate the items of 1925 from those of 1924. If not, it may take further testimony on that particular point alone, and for that purpose only the cause is remanded.—Affirmed in part; reversed in part; and remanded.

WAGNER, C. J., and STEVENS, FAVILLE, DE GRAFF, ALBERT, MORLING, and GRIMM, JJ., concur.

EVANS, J., dissenting from the reversing portion of the opinion.