Board of Trustees of Monona-Harrison Drainage District No. 1 et al., Appellants, v. Boards of Supervisors of Woodbury and Monona Counties et al., Appellees.

CONSTITUTIONAL LAW: Due Process—Repair of Common Drainage
1 Outlet. A statute is not violative of the due-process clause of either the Federal or the state Constitution when such statute grants authority, when necessary, to clean out and repair the outlet of a legally established public drainage improvement and, when such outlet is used in common by other like established districts, to assess the cost of such work to each of the several districts in the ratio that the waters of each district bear to the combined waters of all the districts, *and to make such assessment without notice to the individual property owners.* So held under Ch. 332, Acts 38 G. A.

DRAINS: Outlet—Construction. Sec. 1989-a24, Code Supp., 1913, does
2 not embrace an outlet which is not a "natural watercourse or stream."

*Appeal from Monona District Court.*—A. O. Wakefield, Judge.

February 12, 1924.

Rehearing Denied June 28, 1924.

Action in mandamus, brought by the trustees of the Monona-Harrison Drainage District to compel the boards of supervisors of Woodbury and Monona Counties to levy a tax upon the lands located in certain drainage districts in said counties, for the purpose of paying the cost of cleaning out and repairing a drainage ditch which is used as an outlet by all of said drainage districts. A demurrer to plaintiffs' petition was sustained, and plaintiffs appeal.—*Reversed.*

*Jepson, Struble & Anderson* and *Underhill & Miller,* for appellants.

*Alfred Pizey* and *George E. Allen,* for appellees.

Faville, J.—It appears from the allegations of the peti-

tion that, a number of years ago, a joint drainage district was established in the counties of Monona and Harrison, which is known as the ''Monona-Harrison Drainage District No. 1.'' Appellants are the duly elected, qualified, and acting trustees of said drainage district. The main ditch of said Monona-Harrison Drainage District No. 1 was constructed more than ten years prior to the commencement of this action. It starts from a point on the west fork of the Little Sioux River in the north part of Monona County, and runs in a south and southwesterly direction through Monona and Harrison Counties, and empties into what is known as the ''cut-off,'' which leads to and empties into the Missouri River in Harrison County.

1. CONSTITUTIONAL LAW: due process: repair of common drainage outlet.

Lying in a general northerly direction from said Monona-Harrison Drainage District No. 1 are seven other drainage districts, part of which are located in Monona County and part in Woodbury County. The petition alleges that the said seven drainage ditches use the main ditch of the said Monona-Harrison Drainage District No. 1 as their outlet for the discharge of the waters of said districts. It is also alleged that the said main ditch of the said Monona-Harrison Drainage District became so clogged and filled with silt, by reason of the waters flowing therethrough, that it failed to furnish a sufficient outlet for the uplying drainage districts, or for the waters of the said Monona-Harrison Drainage District, and that, in order to furnish adequate and sufficient drainage for all of said districts, it became necessary that the said main ditch of said Monona-Harrison Drainage District No. 1 should be cleaned out and repaired; that thereupon, appellants, as trustees of said district, caused the same to be cleaned out and repaired and placed in good condition; and that the total cost of cleaning out and repairing of said ditch was the sum of $140,188.

It is further alleged that the trustees of the said Monona-Harrison Drainage District No. 1 duly appointed a competent engineer, and required him to make a careful examination and determine and report the annual flow of water into and through said main ditch from each of said drainage districts, and to determine the proper ratio of the flow of water from each of said

ditches to the combined flow of water from all of them, and the proportionate share of the cost and expense that each of said drainage districts should pay for cleaning out and repairing said main ditch. It is further alleged that said engineer made such investigation, report, and apportionment, and fixed the amount that each of said drainage districts should pay as its share of the costs of said work of cleaning out and repair.

It is further alleged that said appellants properly presented to the appellees a correct statement of the cost and expense of said work of cleaning out and repairing said main ditch and the proportionate share that said drainage district should contribute in payment therefor, and requested appellees to levy and assess against said drainage districts the respective sums and amounts so determined. It is alleged that appellees refused to make said levy and assessment, and a writ of mandamus commanding them to so act is prayed.

The demurrer to the petition challenges the constitutionality of the statutes under which appellants claim the right to require the levy and assessment of said tax.

I.    Section 1989-a24 of the 1913 Supplement to the Code is as follows:

"When two or more districts shall have their outlet or discharge into the same natural watercourse or stream and it shall become necessary to deepen or enlarge said natural watercourse or stream, each district shall be assessed for the cost of such work in the same ratio to such total cost as the discharge of waters of such district bears to the combined discharge of waters of the several districts emptying into said natural watercourse or stream; but no district shall be liable to contribute for any improvement or costs and expenses incurred in improving said natural watercourse or stream above the point of discharge of the waters of such district into the same."

The allegations of appellants' petition do not bring them under the terms and provisions of this statute. It is alleged that the ditch in question was constructed "starting from a

2. DRAINS: outlet: construction.

point at the west fork of the Little Sioux River in the north part of Monona County, runs in a south and southwesterly direction through Monona County and Harrison County, Iowa, until it empties into the Missouri River in Harrison County." There is no allegation in the petition that the ditch in question is a natural watercourse or stream," and the statute above quoted, by its express terms, applies only to a situation where "two or more districts shall have their outlet or discharge into the same natural watercourse or stream."

Under the allegations of the petition, appellants were not entitled to any relief by virtue of said Section 1989-a24.

II.   Chapter 332 of the Acts of the Thirty-eighth General Assembly is as follows:

"When it shall become necessary hereafter to clean out, enlarge, deepen or widen any ditch or drain of any levee or drainage district; which ditch or drain has heretofore been established or constructed, and into or through which any of the waters of any other levee or drainage district shall flow, each levee or drainage district flowing annually into or through such other levee or drainage district, including the levee or drainage district carrying the combined discharge of water, shall be assessed for the cost of such work in the same ratio to such total cost as the discharge of waters of such district bears to the combined discharge of waters of the several districts flowing into or through such a ditch or drain. And when it shall become necessary hereafter to extend any ditch or drain of any levee or drainage district for a better outlet for the waters flowing annually into or through such a ditch or drain so extended for a better outlet, each district, including the district carrying the combined discharge of water, shall be assessed for the cost of such work in the same ratio to the total cost as hereinbefore provided."

Said chapter is applicable to the facts in this case, and the proceedings had in said matter are in pursuance of said act. Appellees contend that said statute violates both the Federal and the state Constitution, and particularly the so-called "due-process" clause thereof. The contention of appellees is that the

act permits the assessment and taxation of the property of tax-payers within the several districts without any notice of such assessment.

It has been established by numberless decisions that the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law" requires that a notice and an opportunity to be heard shall be given at some stage of the proceeding. This has been declared so often by both Federal and state courts as to require no citation of authorities. The question in this case is whether or not the statute under consideration does deprive a landowner of his property by taxation without notice or opportunity for a hearing at some stage of the proceeding.

The legislature has delegated to the boards of supervisors of the counties of the state jurisdiction, power, and authority to establish drainage districts (Code Supplement, 1913, Section 1989-a1), and has provided that, in all actions affecting such drainage districts, the board of supervisors shall be a proper party for the purpose of representing the drainage district and all interested parties therein. Code Supplement, 1913, Section 1989-a14. We treat the question before us, therefore, as though it was urged by an individual taxpayer of one of the drainage districts involved.

Does the statute in question deprive the landowner within a drainage district of his property without due process of law; or, in other words, is the situation such that the statute in question is unconstitutional because it does not provide for any notice to the landowners of the assessment for the work of cleaning out and repairing the ditch in question, which, it is admitted by the demurrer, is the common outlet for all of the drainage districts, and without which the various drainage systems in said districts could not operate?

When each of said drainage districts was established, the respective landowners therein were duly notified of a hearing on the matter of the establishment of said district.

In subsequent proceedings (Code Supplement, 1913, Section 1989-a12), provision is made for the classification of all of the lands benefited by the location and construction of drainage

districts, and said section provides that notice shall be served upon each landowner of a hearing on the matter of the establishment of said classification. Said section of the statute also provides that:

"This classification when finally established shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board, for good cause, shall authorize a revision thereof."

It therefore appears that all landowners in each of the districts represented by the appellees have had due notice and a hearing upon the matter of the establishment of the drainage district, and also another notice and hearing on the matter of the classification of their lands for assessment of benefits for the establishment of said drainage districts.

By Section 1989-a21, Code Supplement, 1913, it is provided:

"Whenever any levee or drainage district shall have been established and the improvement constructed as in this act provided, the same shall at all times be under the control and supervision of the board of supervisors and it shall be the duty of the board to keep the same in repair and for that purpose they may cause the same to be enlarged, reopened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby. The cost of such repairs or change shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same proportion that the original expenses and cost of construction were levied and assessed, except where additional right of way is required or additional lands affected thereby, in either of which cases the board shall proceed as hereinbefore provided."

This section was before us for consideration in *Breiholz v. Board of Supervisors*, 186 Iowa 1147. In that case, the landowners sought the cancellation of assessments levied upon their lands by the board of supervisors on the basis of the original classification for the expense of maintenance, cleaning out, and repairing of a drainage ditch. No notice was had and no hear-

ing therein was afforded the taxpayers of this latter assessment. We therein said:

"In the nature of things, and especially with open ditches having but slight natural slopes or grades, the duty should rest upon some responsible officer or board to see that they are kept open and in repair, and if they do not work efficiently, to cause the removal of the difficulty, if practicable. This responsibility, Section 1989-a21 places upon the board of supervisors. The duty is one which is continuous, calling for supervision from day to day and month to month, or, in the language of the statute, 'at all times.' The work to be done may involve considerable expense, or it may be a succession of petty repairs, each of which is comparatively inexpensive. To require that in each case the board must advertise the job and seek the lowest bidder would be to hamper and prevent its efficient action, without any corresponding benefit to the public. It is not at all strange that a drainage system, once completed and put to practical use, should develop, here and there, a defect; and if such defect can be remedied or the efficiency of the system be increased by lowering the bottom of the channel at some point, or by widening the cut in another place, the right of the board to which the duty of care and maintenance is committed, to do what ought to be done to that end, ought not to be unreasonably restricted. * * * The statute imposes no duty to give notice in advance of each separate work of repair, or to advertise the same for competitive bids, except, perhaps, as may be implied in the proviso at the end of the section, which seems to recognize such necessity where additional right of way is to be taken; and this reservation is sufficient, in our judgment, to obviate any possible objection on constitutional grounds."

The *Breiholz* case was appealed to the Supreme Court of the United States, and was affirmed (*Breiholz v. Board of Supervisors*, 257 U. S. 118). That court said:

"The contention that a new notice and hearing was not required in this case by the due-process provision of the Fourteenth Amendment is a sound one. We are dealing with the taxing power of the state of Iowa, exerted through the familiar agency of a regularly organized drainage district, which, it is

admitted, properly included, and by the system of drainage adopted benefited, the lands of the plaintiffs in error. It is admitted also that their lands were lawfully assessed to pay for the original drainage construction in the same proportion to benefits as that which was applied in this case to the cost of the improvements and repairs.''

The act in question bears a close analogy to said Section 1989-a21.

In the case at bar, we have a situation where the drainage districts represented by appellees were not extended to include the outlet which was essential to the successful operation of the drainage provided for in said districts. Whether or not the uplying districts contributed any amount to the original construction of the main ditch in the Monona-Harrison District, which is utilized by them for outlet purposes, does not appear in the record. But the existence of said ditch and its maintenance in a proper condition do appear to be absolutely essential to the efficient operation of the outlying districts. If said ditch became clogged and filled up, the ditches in the outlying districts discharging into said main ditch could not operate successfully.

By said Chapter 332 of the Acts of the Thirty-eighth General Assembly, the legislature endeavored to apply to a situation of this kind a somewhat similar plan to the one provided by Section 1989-a21 for the maintenance, cleaning out, and repair of a drainage ditch located wholly within a single drainage district. This necessitated, however, one additional element: namely, the ascertainment of the amount that should be assessed for the cost of such work to each drainage district discharging water into such common outlet. It provides that this is to be on the ratio that the discharge of water from such drainage district bears to the combined discharge of water of the several districts flowing into, or through, such common ditch.

It may be conceded that, for any change in the drainage district, or for the undertaking of new improvement, outside of maintenance, cleaning, and repair, that would affect a taxpayer, a new notice and hearing would be essential. Nothing of the kind, however, appears in the instant case. But we have a situation where a drainage district as originally constructed is com-

pelled to, and does, use a ditch constructed by and located in another drainage district as its necessary outlet. The landowners within such district have notice of a hearing on the matter of the establishment of said district, and also a subsequent notice .and hearing on the matter of the classification of their lands for assessment for the cost of the construction of the improvement. The statute provides that the classification so made remains as the basis for all future assessments against their lands. The maintenance and repair of the ditch in the adjacent district which is used as an outlet are absolutely essential to the successful operation of the district so established. Were the outlet ditch wholly within such district, the board of supervisors of that county could, under the statute and under the holding in the *Breiholz* case, cause the same to be cleaned out and repaired and the costs thereof assessed against the landowners on the basis of the original classification, without any notice thereof.

The legislature has now provided that, where one drainage district uses the ditch of another drainage district as its outlet, the board of supervisors of the last named district is charged with the duty of maintaining, cleaning out, and repairing said ditch. This is not only for the benefit of the district in which said ditch is constructed, but is also essential to the successful operation of the ditches of the other district or districts that use said ditch as an outlet. Obviously, it is equitable that the drainage districts that discharge their waters into said common outlet, and thereby necessarily contribute to its becoming clogged with silt and debris, should bear their proportionate share of the cost and expense of cleaning out said ditch and maintaining it in a proper manner for the successful operation of the several ditches discharging therein. The authority to so repair and improve said common ditch has been delegated by the legislature to the board of supervisors of the district in which said ditch is located. This the legislature had power to do.

The statute then provides for the distribution of said cost ratably and proportionately among the several districts discharging water into said common outlet, upon the basis of the amount of such discharge.

The board of supervisors or board of trustees of the district

in which the outlet ditch is located is, by statute, made the in-
strumentality for maintaining said outlet ditch in proper repair.
In one sense this board might be said to be the agent of the sev-
eral districts using said common outlet for said purpose.    It
reports to the boards of supervisors, who are the representatives
of the said several districts, the cost of cleaning out and repair-
ing said outlet.    Under the statute, the said boards of super-
visors are to then assess said costs against the lands in said dis-
tricts on the basis of the original classification thereof, exactly
as though said outlet ditch lay wholly within the local drainage
district and had been repaired and cleaned by the local board
of supervisors.

The classification of lands has already been fixed and de-
termined, upon due notice and proper hearing.    What difference
can it make to the legal rights of the landowner that the outlet
ditch is in another drainage district, rather than in the one in
which his lands are located?    No change is or can be made in
his classification.    He is merely assessed to pay for the neces-
sary cost of the cleaning and repair of the outlet of the ditch
of the district in which his lands lie.    The landowner has had
his notice and hearing on his classification as much in the in-
stance where the outlet ditch lies outside the drainage district as
he has where it lies within the borders of the drainage district.
If the assessment in one instance is legal, there is no good reason
why it is not in the other.    He has had notice, exactly the same
in one case as in the other.

The question of the proper apportionment of the cost of
the work of cleaning and repairing was a mere mathematical
calculation.    It required only the ascertainment of the relative
discharge of water from the several drainage districts into the
common outlet.    The cost was then divided proportionately.
There is no contention in this case that the apportionment so
made was not correct in every particular.

In *Yeomans v. Riddle*, 84 Iowa 147, we said:

"It is complained that no petition for the reopening, deep-
ening, or repairing the ditch was presented to the board of
supervisors, no notice of the proceeding or the petition was
given, and the supervisors did not divide the work into sec-

tions, fix the time for completing the work, nor advertise the letting thereof, and the order for the work was made at a special session of the board. It is sufficient to say that these objections are not based upon any violation of the statute; for it does not prescribe that, in proceedings for the reopening or repairing of a ditch, a petition shall be presented asking that the work be ordered, that the work shall be divided into sections, and the time for completing it shall be fixed, the letting of the work shall be advertised, and that the order for the work shall not be made at a special session of the board of supervisors. These things are required when the ditch is first established and the work done, but not in case of repairs ordered. See Code Section 1214, above cited. The reopening and repairs are really con- templated when the ditch is originally ordered. Unless the ditch be reopened when filled by the action of the frost and water or other cause, and repaired when injury has been sustained by floods or other causes, the original outlay would be wholly lost. The law contemplates what is familiar in the experience of all, that improvements of this kind require constant watchfulness and care to preserve them and their usefulness. It was not the purpose of the law to authorize the construction of the ditch without conferring authority and providing a manner of pursuing it. * * * It is very plain that the jurisdiction acquired by the original petition, notice, and other proceedings continues, and that the duty of exercising that jurisdiction is imposed upon the supervisors.''

So in the case at bar, the original construction of the ditch required the use of the outlet ditch in the Monona-Harrison Drainage District, and the landowners were bound to know that the proper care of said ditch would require ''constant watchfulness'' to preserve its usefulness for all of the said drainage districts. The jurisdiction acquired in the original proceedings fixed the basis of classification of the several landowners in said districts, and this was a sufficient compliance with constitutional provisions. No more is required than that said landowners, on the same basis of classification, should contribute their pro-rata share of the cost of maintenance, for their own

benefit, of the outlet which is essential to the successful operation of the drain.

In *Ross v. Board of Supervisors,* 128 Iowa 427, we said:

"It seems to be well settled that a statute which provides for notice to the property owner at some stage of the proceedings before the assessment is made is not open to the constitutional objection simply because it does not provide for a new or additional notice of each successive step leading up to the assessment."

In *Spencer v. Merchant,* 125 U. S. 345, the Supreme Court of the United States said:

"If the legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law."

In *King v. Mullins,* 171 U. S. 404, the court said:

"Much of the argument on behalf of the plaintiff proceeds upon the erroneous theory that all the principles involved in due process of law as applied to proceedings strictly judicial in their nature apply equally to proceedings for the collection of public revenue by taxation. On the contrary, it is well settled that very summary remedies may be used in the collection of taxes that could not be applied in cases of a judicial character."

In *Stone v. Little Yellow Drain. Dist.,* 118 Wis. 388 (95 N. W. 405), it is said:

"A still further and perhaps stronger reason controls the objection now made, namely, that notice of this additional assessment could have availed plaintiff nothing. Every question upon which he had any right to be heard had already been concluded. The court, by its former order, had established the public purpose, the benefit to plaintiff's land, and the proportion. All that could be done by the commissioners or by the court in making this second assessment was mere arithmetical computation, for which the presence of a property owner was neither necessary nor useful."

In *People v. Chapman,* 127 Ill. 387 (19 N. E. 872), the court said:

"And for the same reason that a party over whose person the court has acquired jurisdiction is required to take notice of the different steps taken in his case, the property owner in a drainage district who has been notified of the classification of the lands must also be required to take notice of each succeeding step taken by the commissioners to effect the object for which the district has been organized."

See, also, *Brite v. Grubbs*, 144 Tenn. 647 (234 S. W. 759) ; *French v. Barber Asphalt Pav. Co.*, 181 U. S. 324; *English v. Mayor of Wilmington*, 2 Marv. (Del.) 63 (37 Atl. 158) ; *Wagner v. Baltimore City*, 239 U. S. 207, 217; *Meggett v. City of Eau Claire*, 81 Wis. 326, 333 (51 N. W. 566) ; *Hennessy v. Douglas County*, 99 Wis. 129, 148 (74 N. W. 983) ; *Voigt v. Detroit City*, 184 U. S. 115; *Weyerhaueser v. Minnesota*, 176 U. S. 550; *King v. Portland City*, 184 U. S. 61; *Valley Farms Co. v. County of Westchester*, 261 U. S. 155.

It is only when legislative enactments clearly and palpably infringe upon constitutional provisions that the courts should declare them invalid. *Santo v. State*, 2 Iowa 165; *State v. Fairmont Creamery Co.*, 153 Iowa 702; *Hunter v. Colfax Consol. Coal Co.*, 175 Iowa 245; *Kimball v. Board of Supervisors*, 190 Iowa 783.

The statute in question, in view of its manifest purpose and its applicability only to instances where a landowner has had due notice and a hearing as to the classification of his lands for taxation, does not deprive him of his property without due process of law, and does no violation to the provisions of either the Federal or the state Constitution.

We are limiting our decision in this appeal to the one question presented, namely: whether or not the statute in question is constitutional. We expressly reserve from this decision any question with regard to matters that may arise upon the trial of said cause, either as to fact questions or law respecting the apportionment of the cost incurred in cleaning out the ditch, or the proportionate liability, if any, of the several drainage districts therefor. These and other matters that may arise upon the trial of the case do not inhere in the present appeal, and are not in any manner involved in the determination of this appeal.

The court erred in sustaining the demurrer to appellants' petition, and the cause must be—*Reversed.*

All the justices concur.