BOARD OF TRUSTEES of Monona-Harrison Drainage District No. 1 et al., Appellants, v. BOARD OF SUPERVISORS of Monona County et al., Appellees.

No. 44999.

APRIL 2, 1940.

REHEARING DENIED OCTOBER 18, 1940.

Underhill & Underhill, Devere Watson, and Anderson & Bails, for appellants.

George E. Allen, for Board of Supervisors of Monona County, appellee.

Ralph C. Prichard, Kindig, Faville & Mathews, Lowell C. Kindig, and Carl W. H. Sass, for Board of Supervisors of Woodbury County et al.

MITCHELL, J.—The Board of Trustees of the Monona and Harrison Drainage District of Monona and Harrison counties commenced this action in equity in the district court of Monona county, Iowa, against the Boards of Supervisors of Monona and Woodbury counties and against the Boards of Trustees of the Farmers Drainage District and the Garretson Drainage District No. 1 of Woodbury county, to compel them by mandamus to levy assessments in the various drainage districts under their respective jurisdictions, for the purpose of obtaining a contribution to the costs of cleaning out and repairing the canal in the Monona-Harrison Drainage District. The

Board of Supervisors of Woodbury county and the Board of Trustees of Garretson Drainage District attacked the venue of the action in Monona county filing a motion for change of venue. All of the defendants filed motions for separate trials, claiming that there was a misjoinder of defendants. The lower court held that the venue of the action lay in Woodbury county as to the defendants residing in that county, and also held that there was a misjoinder of parties and ordered a separation of actions against such drainage district. The plaintiff has appealed.

The Monona-Harrison Drainage District No. 1 was established in 1904, and the construction of the main ditch was completed in 1908. The main ditch originated in the northern part of Monona county at a point where it intersected a small stream known as the west fork of the Little Sioux river and connected with an upper drainage district known at that time as the Woodbury-Monona District. The Monona-Harrison district traverses Monona and Harrison counties running in a southwesterly direction until it ultimately empties into the Missouri river. Through the course of years following the establishment of the Monona-Harrison district many smaller drainage districts were established, until at this time, there are 28 districts. They are tributary to and empty their waters into the main ditch of the Monona-Harrison district, either directly or indirectly. In the course of time the outlet, the Monona-Harrison ditch fills up, and it is necessary to clean it out. A better idea of the size of the project can no doubt be gotten from the number of acres involved. In Monona county there are 16 districts embracing an aggregate of better than 28,000 acres of land. In Woodbury county there are 12 districts embracing an aggregate of better than 100,000 acres of land. In the Monona-Harrison district there are better than 62,000 acres, making a grand total of over 248,000 acres of land, which are affected by the care and control of the waterways in the Monona-Harrison District, it being the outlet for the other districts.

In 1920 there was a clean out in the Monona-Harrison

district and at that time the other districts were asked to contribute and refused. An action was brought which eventually reached this court and the opinion is reported in 198 Iowa 117, 197 N. W. 82. The tributary districts were required to contribute, however, the questions involved in the case at bar, to wit, the change of venue and misjoinder of parties, were not raised and of course not decided.

In 1936 the Monona-Harrison ditch, in the judgment of the board of trustees became so clogged up, that the necessity of a clean out and repairs was determined by the trustees.

The work was completed in 1938. Pursuant to the provisions of section 7564 of the 1935 Code of Iowa, the trustees appointed a commission which proceeded to determine the proportionate benefits and sum total to be assessed to the various drainage districts using said waterways of the Monona-Harrison district, as a common outlet. These tributary districts were then requested and notified to levy an assessment to pay their proportionate benefits as determined by the commission. They refused to make the levies and as a result this action was brought.

We are not confronted here with the merits of the case.

Appellant first alleges that the court erred in holding that the causes of action were improperly joined.

The same parties to this action, involving the same drainage district and the same question of contribution to a clean out of the outlet ditch, appealed to this court back in 1924.

In the case of Board of Trustees v. Board of Supervisors, 198 Iowa 117, 125, 197 N. W. 82, 86, speaking through former Justice Faville, this court said:

"The board of supervisors or board of trustees of the district in which the outlet ditch is located is, by statute, made the instrumentality for maintaining said outlet ditch in proper repair. In one sense this board might be said to be the agent of the several districts using said common outlet for said purpose. It reports to the boards of supervisors, who are the representatives of the said several districts, the cost of cleaning

out and repairing said outlet. Under the statute, the said board of supervisors are to then assess said costs against the lands in said districts on the basis of the original classification thereof, exactly as though said outlet ditch lay wholly within the local drainage district and had been repaired and cleaned by the local board of supervisors.

"The classification of lands has already been fixed and determined, upon due notice and proper hearing. What difference can it make to the legal rights of the landowner that the outlet ditch is in another drainage district, rather than in the one in which his lands are located? * * *

"So in the case at bar, the original construction of the ditch required the use of the outlet ditch in the Monona-Harrison Drainage District, and the landowners were bound to know that the proper care of said ditch would require 'constant watchfulness' to preserve its usefulness for all of the said drainage districts. The jurisdiction acquired in the original proceedings fixed the basis of classification of the several landowners in said districts, and this was a sufficient compliance with constitutional provisions. No more is required than that said landowners, on the same basis of classification, should contribute their pro-rata share of the cost of maintenance, for their own benefit, of the outlet which is essential to the successful operation of the drain."

Thus we find that this court said that the Board (appellant in this cause) "might be said to be the agent of the several districts using said common outlet for said purpose". There can be no question of this, and yet the appellees urge that instead of one action, there should be 28 actions, all brought by the outlet district against the districts that under the law are compelled to pay their proportionate share of the cost.

Section 10960, Code of Iowa, 1935:

"Causes of action of whatever kind, where each may be prosecuted by the same kind of proceedings, if held by the same party, and against the same party, in the same rights, and if

action on all may be brought and tried in that county, may be joined in the same petition.''

Section 10972, Code of Iowa, 1935:

''Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved in the action, except as otherwise expressly provided.''

Section 7563, Code of Iowa, 1935:

''When two or more drainage districts outlet into the same ditch, drain, or natural watercourse and the board determines that it is necessary to clean out, deepen, enlarge, extend, or straighten said ditch, drain, or natural watercourse in order to expeditiously carry off the combined waters of such districts, the board may proceed as provided in sections 7561 and 7562. Each district shall be assessed for the cost of such work in proportion to the benefits derived.''

Section 10981, Code of Iowa, 1935:

''The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, it must order them to be brought in.''

Reading the above Code sections together, in the light of the facts before us, it is evident that the appellant had the right to join all of the defendants. For all of these districts are interested in the case, the same questions are involved in each district and the relief prayed for is the same.

This is an equity action and in the words of Justice Beck in the case of Hammond v. Perry, 38 Iowa 217, 218:

'' * * * it is the policy of chancery to fully settle the rights

of parties to actions while they are before the court, and not to send them out to bring new suits."

In the case of Creger v. Fenimore, 216 Iowa 273, 276, 249 N. W. 147, 148, this court said:

" * * * this is an action in equity, and all parties interested are in court and the matters involved grow out of the same subject-matter. Under these circumstances, we think equity has jurisdiction to determine all of these matters, and the rights of the respective parties, and the general rule as to separate actions does not apply. This is a very convenient way of avoiding multiplicity of suits, however, under which circumstances equity always has jurisdiction."

And so in the case at bar, all of these districts are in court, the questions involved are the same in each district, and to prevent the trial of 28 separate suits, equity has jurisdiction.

It is next argued that the lower court erred in sustaining the motions for a change of venue.

All of these districts are in the same judicial district, and the distance between Monona and Woodbury counties, in this day of the automobile is a short space.

Code section 11036, subsec. 2, 1935 Code, is as follows:

"Actions for the following causes must be brought in the county where the cause, or some part thereof, arose: * * *

"2. Those against a public officer or person specially appointed to execute his duties, for an act done by him in virtue or under color of his office, or against one who by his command or in his aid shall do anything touching the duties of such officer, or for neglect of official duty."

The statute above-quoted fixes the venue of an action against public officials "in the county where the cause or some part thereof arose". The legislature saw fit to say nothing about the venue being in the county of the residence of such officials, but only in the county "where the cause or some part of it arose."

In the recent case of State Appeal Board v. District Court,

225 Iowa 296, 280 N. W. 525, 527, the same proposition now urged by the appellees was raised, and this court held that the venue in an action against public officials was not in the county where they had their offices or resided, but where the "original action or proceeding involv[ed] * * * or any part thereof, [arose]".

In the case at bar, the proceedings were in Monona county, where the outlet district was located, where the work was done, where the commission to apportionate the costs was appointed "Under the statute, the appellant was made the instrumentality for maintaining said outlet district in proper repair. In one sense, this board might be said to be the agent of the several districts."

One of these districts has land in both Woodbury and Monona counties. Under appellees' theory, the cause would have to be tried in both counties. The cause of action, or some part of it, arose in Monona county, and as it was action against public officials, the venue could be in Monona county.

It necessarily follows that the lower court erred in sustaining the motion for change of venue.

A motion to dismiss was submitted with the case. It has been carefully considered, and is hereby overruled.—Reversed.

HAMILTON, C. J., and SAGER, HALE, MILLER, STIGER, and BLISS, JJ., concur.