BOARD OF TRUSTEES OF MONONA-HARRISON DRAINAGE DISTRICT No. 1 et al., Appellees, v. BOARD OF SUPERVISORS OF MONONA COUNTY et al., Appellants; M. J. MULVIHILL et al., Interveners, Appellants.

No. 46655.

JUNE 19, 1945.

REHEARING DENIED SEPTEMBER 22, 1945.

 █ 

George E. Allen, Prichard & Prichard, and John D. Beardsley, all of Onawa, Carl W. H. Sass, Robert B. Pike, and Kindig, Kindig & Beebe, all of Sioux City, for appellants.

Underhill & Underhill, of Onawa, Devere Watson, of Council Bluffs, and Anderson & Bails, of Sioux City, for appellees.

GARFIELD, J.—For convenience we disregard the fact that the individual trustees are joined as plaintiffs.

Plaintiff board represents the Monona-Harrison Drainage District No. 1, which includes 62,867 acres in Monona county and 6,753 acres in Harrison county. The district was established in 1904 and construction of its original improvement was finished in 1908 at a cost of about $465,000. The district is composed principally of bottom land east of the Missouri River, southeast of Sioux City.

Plaintiff's main ditch extends generally north and south approximately twenty-one miles, about parallel to and a mile west of the Little Sioux River, which flows into the district from the northeast and forms part of the drainage scheme. The main ditch outlets into the Missouri River through a natural cutoff in the northwest part of Harrison county, which lies south of Monona county. At least the lower half of the main ditch is about sixty feet wide at the bottom and eighty to one hundred feet wide at the top. Defendant districts are principally north of plaintiff district and, plaintiff contends, outlet into it. Approximately 250,000 acres are included in all the districts.

In 1936 to 1939, inclusive, plaintiff caused certain work to be done in its district, which it claims was necessary in order to carry off the combined waters of the various districts. This suit was brought to compel the upper districts to levy assessments to pay their share of the expense incurred upon the alleged common outlet. Following trial, the lower court held that plaintiff had failed to prove it is the outlet for four of defendant districts which are somewhat remotely situated and as to them

relief was denied. Relief was also denied as against fourteen other districts which are parts of one or more larger districts against which relief was granted. Since plaintiff has not appealed we need not consider the correctness of the decree in these two respects. The court held that plaintiff district affords an outlet for twelve defendant districts and granted relief against them.

The trial court found that the total cost of the repair work done by plaintiff in 1936 and 1937 was $67,150.13; in 1938, $44,766.75, and in 1939, $35,813.40. The commissioners appointed by plaintiff under Code section 7564 had apportioned 27.31 per cent of the total cost to plaintiff district and the balance to the other districts. The trial court confirmed the assessments against plaintiff district and the twelve districts held liable and directed that special assessments be levied against the lands in those districts (see Code section 7567) to raise funds with which to pay said amounts.

This action has been before us on two prior appeals. Board of Trustees v. Board of Supervisors, 228 Iowa 1095, 291 N. W. 141, and Board of Trustees v. Board of Supervisors, 232 Iowa 1098, 5 N. W. 2d 189. Only the pleadings were then involved. On the first appeal we held there was no misjoinder of parties and that the action was properly brought in Monona county. On the second appeal we held that the constitutional question raised by defendants had been settled against them, that the only issues to be tried were those raised by the general denial, and to be entitled to relief plaintiff must prove that it is the outlet district, it made the repairs, the cost thereof did not exceed 10 per cent of the original cost of the improvement, and defendants have not paid their assessment.

Pursuant to our decision on the second appeal, and before trial, the lower court on plaintiff's motion struck out all defenses except the general denial and confined the issues for trial to those reserved by our opinion. Defendants concede they have not paid any of the expense incurred by plaintiff. No contention is made that the cost of the alleged repairs in any year exceeds 10 per cent of the original cost of the improvement. See, as bearing on this question, Haugen v. Humboldt-Kossuth Drainage Dist., 231 Iowa 288, 1 N. W. 2d 242. However, defendants deny

that plaintiff is the outlet district and that it made the repairs.

I. We agree with the trial court that plaintiff's is the outlet district for the twelve districts against which relief was granted.

Before plaintiff's ditch was built, natural watercourses afforded an outlet for drainage in this area. One of these streams was the West Fork of the Little Sioux River. The upper part of plaintiff's main ditch tapped the West Fork about three miles above its outlet into the Little Sioux and took its water on almost a direct course, without meandering, to the Missouri River. Water does not now run in the West Fork beyond the source of plaintiff's ditch. The Little Sioux River was connected with plaintiff's main ditch about nine miles below its source by means of a cutoff or canal known as an equalizer, about one fourth of a mile long. This permits the water to run from the river into the ditch. Work was done on the Little Sioux at the time plaintiff's main ditch was built and as part of the drainage improvement. The equalizer, however, was apparently not part of the original plan. The Maple River, east of the Little Sioux, also flows southwest and discharges its water into the Little Sioux about one and one-half miles above the equalizer through a cutoff built by plaintiff district.

Of the districts held liable, West Fork and Haitz outlet very near the source of plaintiff's main ditch. The Wolf Creek ditch discharges its water into the Haitz ditch. The Garretson and Linscott ditches discharge their waters into the Farmers-Garretson outlet ditch, which also outlets very near the source of plaintiff's main ditch. The Farmers ditch discharges its water into the Garretson ditch less than a mile above where the Garretson ditch converges with the Farmers-Garretson outlet ditch at its source. The Onawa and Blencoe districts discharge their waters into the McNeil district, which lies almost wholly within, and outlets into, plaintiff district. The remaining districts held liable are generally east of those previously mentioned. They are the Maple River, Upper Maple, Upper Sioux, and Smithland districts. The Upper Maple unites with the Maple River a short distance above where the latter flows into the Little Sioux River through the cutoff about one and

one-half miles above the equalizer. The Upper Sioux and Smithland districts discharge their waters into the Little Sioux River above the equalizer.'

Section 7563, Code, 1939, under which plaintiff claims to have acted, provides:

"Improvement of common outlet. When two or more drainage districts outlet into the same ditch, drain, or natural watercourse and the board determines that it is necessary to clean out, deepen, enlarge, extend, or straighten said ditch, drain, or natural watercourse in order to expeditiously carry off the combined waters of such districts, the board may proceed as provided in sections 7561 and 7562. Each district shall be assessed for the cost of such work in proportion to the benefits derived."

Defendants contend this statute has no application to several of the upper districts because they had outlets in natural · streams and needed no other outlet. We are unable to agree. The natural streams apparently did not furnish satisfactory outlets. They were shallow, of limited fall and meandering course. Plaintiff's ditch provides these upper districts with a deeper and more adequate outlet that discharges their waters into the Missouri River in a much more direct course than nature had done. See, as bearing on this phase of the case, Mayne v. Board of Supervisors, 208 Iowa 987, 994, 223 N. W. 904, 225 N. W. 953; Board of Supervisors v. Board of Supervisors, 214 Iowa 655, 241 N. W. 14.

We are also unable to agree with defendants' claim that section 7563 applies only to those districts which outlet directly into the lower district.

On the first appeal of this very case we said, in referring to the upper districts, Board of Trustees v. Board of Supervisors, supra, 228 Iowa 1095, 1097, 291 N. W. 141, 142: ·

"They are tributary to and empty their waters into the main ditch of the Monona-Harrison district, *either directly or indirectly*. In the course of time *the outlet*, the Monona-Harrison ditch fills up, and it is necessary to clean it out. * * * *it being the outlet for the other districts*." (Italics supplied.)

A contention similar to that made by defendants was rejected in Board of Supervisors v. Board of Supervisors, supra, 214 Iowa 655, 679, 241 N. W. 14. While the statutory provisions under which part of the work was done in the cited case were somewhat different then, the principles there applied are equally applicable here.

Board of Trustees v. Boards of Supervisors, 198 Iowa 117, 120, 197 N. W. 82, 84, was a suit like this one, by the same plaintiff against some of the upper districts. Referring to chapter 332, Acts of the Thirty-eighth General Assembly, the earlier statutory provisions to which we referred in the preceding paragraph, we there observed: ''Said chapter is applicable to the facts in this case * * *.''

In Walker v. Joint Drainage Dist., 197 Iowa 351, 357, 197 N. W. 72, 74, we said: ''There may be numerous outlets in a drainage system * * *.'' In Mathwig v. Drainage District, 188 Iowa 267, 269, 171 N. W. 125, we observed that the word ''outlet,'' as used in a statute somewhat analogous to the present section 7563, included an open ditch which was the final outlet of the entire system as well as a tile which formed the outlet for several laterals. See, also, Coe v. Board of Supervisors, 229 Iowa 798, 802, 295 N. W. 151, 154, where we held that the lowest of three districts was the outlet under section 7563 for the uppermost district. Board of Supervisors v. Board of Supervisors, 234 Iowa 123, 12 N. W. 2d 259, also bears on this question.

The effect of defendants' argument is that plaintiff's main ditch does not outlet into the Missouri River because its water passes through a natural cutoff between the ditch and the river. The conclusion for which defendants contend cannot be reached by giving section 7563 the liberal construction we are required by section 7594 to give it.

If all the land in plaintiff district and the districts held liable had been embraced in a single district it would scarcely be claimed that plaintiff's main ditch does not afford the outlet for the upper lands. Of course, it does not follow from the fact that different districts were established that plaintiff's ditch does not furnish the outlet for the upper lands. As the trial court stated in its findings, ''it seems clear that nature

has bound all of the land on this bottom above the plaintiffs' district into one drainage problem and that the focal point of that problem is the very point tapped by plaintiffs' district.''

II. We think there is sufficient proof that plaintiff made the repairs in question. Defendants offered no evidence on this issue.

A resolution of plaintiff board on March 28, 1936, recited it had ''determined that it is necessary to clean out, deepen, enlarge and straighten said main ditch and parts of the Little Sioux River in this district as may be determined by an engineer in order to expeditiously carry off the combined waters of this district and upper districts entering into this district.''

The clean-out work on plaintiff district during the years in question was planned by Mr. Mayne, an engineer of the CCC (Civilian Conservation Corps) camp at Whiting. The board followed his plans and specifications but did some other work that it thought should be done. Much of the work was done by the CCC camp, with its engineer in charge, without cost to the district. Plaintiff hired other work done. B. H. Davis, an engineer at Onawa, also did engineering work for plaintiff off and on for five or six years on both the main canal and the Little Sioux River. He was a witness and appeared to be thoroughly familiar with the situation. With two other persons, Mr. Davis acted as commissioner to apportion the cost of the work among the various districts. The silt that came in from the northern districts was removed all up and down the main canal and the Little Sioux River. Plaintiff cleaned the Little Sioux north of the equalizer twice. The deposit of silt in the ditches in this area is general.

Plaintiff offered in evidence more than a thousand claims filed against it for labor or material which plaintiff had allowed and paid.

Defendants make particular complaint that many of the claims are not verified or the verifications are imperfect. There appears to be no statutory requirement that claims against a drainage district be verified. However, we may assume without deciding that it was irregular for plaintiff to pay claims not properly verified. While perhaps advantage might be taken of this irregularity, if it was such, by appeal, in our opinion

this is not sufficient to justify interference on our part in this action. Coe v. Board of Supervisors, supra, 229 Iowa 798, 803, 295 N. W. 151, 154.

Complaint is also made that there is included within the total amount assessed to the different districts the cost of a dragline excavating machine which plaintiff purchased in March 1936, for about $17,000, neary 12 per cent of the total expense incurred. A trustee who had served since 1930 testified in effect that formerly some of the maintenance work had been done with horses; so much water came into plaintiff district from the north it was impossible to handle it; after very careful consideration, and following complaints from landowners, the board determined it was advisable to purchase the dragline in order to take care of the extra flow and silt from the north; the dragline was purchased on competitive bids; the board hired men to operate it.

Assuming inquiry may be made in this action into the propriety of including the cost of the dragline in the total amount assessed, we are not prepared it hold it was improper. Plaintiff, apparently in good faith, believed the purchase of this machine would result in an ultimate saving to the various districts. There is no showing the board was mistaken nor that this purchase was unwise. It is true plaintiff district still has the dragline but it is both morally and legally obligated to use it as contemplated by section 7563 for the benefit of the districts which pay for it. We may assume the board will perform its duty in this regard.

Defendants also complain that claims totaling nearly $4,000 are for work on dikes or spoil banks. About $50 of claims are for sacks presumably used to fill with sand to reinforce the dikes. In objecting to these claims, defendants stated it is common knowledge that sacks purchased by plaintiff are used for such purpose. Assuming this is a proper inquiry in this action, we are not justified in holding the expense on dikes or spoil banks was improperly included in the amount assessed.

Mayne v. Board of Supervisors, supra, 208 Iowa 987, 994, 223 N. W. 904, 907, 225 N. W. 953, involved the right and duty of a lower district to charge to an upper district part of the cost of work which included building new levees on the sides

of its ditch to protect against overflow caused by increased water from the upper district. We said in the Mayne case:

"The construction of these ditches in most parts of the state was with the thought that the spill bank on either side of the ditch was intended to take care of the water when there was more of it in the ditch than it could handle. In other words, it made an additional ditch above the ground, and is all a part of the same improvement."

III. Defendants have urged both in the lower court and here some other contentions that are outside the issues which we held on the last appeal, Board of Trustees v. Board of Supervisors, supra, 232 Iowa 1098, 1103, 5 N. W. 2d 189, 192, remained for trial. One such contention is that the cost was assessed against the districts in proportion to acreage, not in proportion to benefits derived, contrary to section 7563. This contention was raised by allegations in the original answer, which we held on the last appeal should have been stricken. The trial court, pursuant to our opinion, did strike these allegations. Our former decision is not only a precedent but it established the law of the case. Brenton State Bk. v. Heckmann, 233 Iowa 682, 685, 7 N. W. 2d 813, 814, and authorities cited; 5 C. J. S. 1275, 1276, section 1823; 3 Am. Jur. 551, 552, section 997; id. 554, section 1001. Defendants are therefore not entitled to have these propositions considered.

IV. It is claimed plaintiff did not make a preliminary determination that the work was necessary and therefore was without jurisdiction to charge any of the cost to defendant districts. Although it is doubtful at best if defendants are entitled to have this claim considered in view of our opinion upon the last appeal, we will consider it briefly, as well as the matter of constitutionality of the statutes involved.

As heretofore stated, a resolution of plaintiff on March 28, 1936, recited that it "determined that it is necessary to clean out, deepen, enlarge and straighten said main ditch and parts of the Little Sioux River," etc. Although this was part of the resolution for the purchase of the dragline, it would seem to have been sufficient compliance with section 7563. But in

any event, we have held that the absence of any record showing the board's determination the improvement was necessary is not fatal to assessments such as these against the upper districts. Coe v. Board of Supervisors, supra, 229 Iowa 798, 801, 295 N. W. 151, 153.

V. Defendants argue that Code sections 7563–7566 violate the due-process provisions of the State and Federal Constitutions because they do not provide for notice and hearing to the upper districts of the total amount to be assessed to each district. We held upon the last appeal that this question has been settled against defendants. This holding is the law of the case. We are not disposed to recede from it, even if we were to disregard the doctrine of the law of the case.

What is now section 7563 (formerly section 1989-a24, Code Supp., 1913, with some changes not material here) is squarely upheld against an identical attack on its constitutionality in a suit between the same plaintiff and some of these defendant districts in Board of Trustees v. Boards of Supervisors, supra, 198 Iowa 117, 197 N. W. 82. That case is cited with approval in Board of Supervisors v. Board of Supervisors, supra, 214 Iowa 655, 664, 665, 241 N. W. 14, and Ward v. Board of Supervisors, 214 Iowa 1162, 1165, 241 N. W. 26, and also in our opinion upon each prior appeal in the case now before us. Board of Supervisors v. Board of Supervisors and the Ward case uphold what is now section 7563 (except for the changes not here material) against the claim that it is unconstitutional because it fails to provide for notice prior to making the improvements, and plainly imply that the precise question defendants now raise was settled in Board of Trustees v. Boards of Supervisors, supra.

Furthermore, section 1989-a21, Code Supp., 1913 (now, with some changes not here material, sections 7556–7560, Code, 1939), authorizing the making of repairs in the same district and assessing the cost thereof, without notice, has been held on several occasions not to violate due process. Breiholz v. Board of Supervisors, 186 Iowa 1147, 173 N. W. 1; id., 257 U. S. 118, 42 S. Ct. 13, 66 L. Ed. 159; Payne v. Missouri Valley Drainage Dist., 223 Iowa 634, 643, 272 N. W. 618; Nelson v. Graham, 198 Iowa 267, 197 N. W. 905. See, also, Baldozier v. Mayberry,

226 Iowa 693, 285 N. W. 140. We have held at least twice that the statutory provisions upheld in these last-cited cases are closely analogous on the question of constitutionality to what is now section 7563. See Board of Trustees v. Boards of Supervisors, supra, 198 Iowa 117, 124, 197 N. W. 82; Board of Supervisors v. Board of Supervisors, supra, 214 Iowa 655, 665, 241 N. W. 14.

After considering all questions presented, the judgment is —Affirmed.

All JUSTICES concur.